DAVIS et al., Appellants,

v.

BILLOW COMPANY FALLS CHAPEL, Appellee.

[Cite as *Davis v. Billow Co. Falls Chapel* (1991), 81 Ohio App.3d 203.]

Court of Appeals of Ohio,
Summit County.

No. 15130.

Decided Nov. 27, 1991.

204

*Susan K. Pritchard,* for appellants.

*John G. Salmon,* for appellee.

---

REECE, Judge.

Maria Davis Sedaker died on September 15, 1989. Her husband, Robert Sedaker, who is not a party to this lawsuit, contacted the defendant-appellee, the Billow Company Falls Chapel ("Billow"), to make the funeral arrangements. The following day, Robert went to Billow's place of business. He was accompanied by Maria's father, Dean Davis, one of the plaintiffs-appellants in this action. Robert and Dean met with Fred Rieman, a funeral director employed by Billow. Robert instructed Rieman that Maria's body was not to be embalmed. Due to this request it was understood that the body would have to be refrigerated. A contract was signed by Robert and Rieman, as Billow's agent, which included a charge of $60 per day for refrigeration of the body. Arrangements were made for calling hours at Billow's chapel on the evening of September 17, 1989, with funeral services and entombment to occur the following day.

All of the plaintiff-appellants, members of the decedent's family, attended the calling hours. These parties are: the decedent's parents, Dean and Hildegard Davis; her siblings, Rickey and Lynn Davis; and her daughters, Jennifer Davis and Christina Sedaker. Toward the end of the calling hours, when everyone else had left, the decedent's husband and daughters asked to place personal items inside the casket. At this time they learned that the body was not in the casket. This fact was later told to the other appellants at various times following the burial services.

The parties are in dispute as to whether Maria's body was supposed to be in the casket during the calling hours. Billow asserts that an unembalmed body would never be removed from refrigeration and placed in a casket prior to burial. Appellants respond that even if this is Billow's normal method for handling unembalmed bodies, they should have been advised that the casket would be empty. Billow maintains that Rieman explained its procedures to Robert and Dean when the funeral arrangements were made.

Appellants claim that they have suffered severe emotional distress in learning that the casket was empty when they gathered to pay their last respects to the decedent. They blame their mental distress on the intentional and/or negligent acts of Billow in not having the body in the casket during calling hours or in not giving them a prior warning that the casket would be empty.

On January 17, 1991, Billow filed a motion for summary judgment. This motion was granted by the trial court on April 19, 1991. From this judgment the appellants appeal, raising three assignments of error. For purposes of analysis, these assignments of error will be addressed out of sequence.

### Assignments of Error Nos. III and II

"III. The trial court committed reversible error in granting the defendant's motion for summary judgment because the conduct of the defendant in deliberately misleading the plaintiffs that the body of the deceased was in the casket was so extreme and outrageous as to go beyond all possible bounds of decency, and was atrocious and intolerable in a civilized society."

"II. The trial court committed reversible error in granting the defendant's motion for summary judgment because the severe emotional harm that resulted to the plaintiffs was reasonably foreseeable under the circumstances."

Under these two assignments of error appellants advance two distinct theories for recovery of emotional distress. These two theories will be addressed separately.

### (A) Intentional Infliction of Emotional Distress

■ There are four elements which must be proved in order to recover in an action for the intentional infliction of emotional distress. These elements are:

" * * * 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' Restatement of Torts 2d (1965) 73, Section 46, comment *d;* 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it,' Restatement of Torts 2d 77, Section 46, comment *j.* * * * " *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66, 463 N.E.2d 98, 103.

In characterizing the conduct which is necessary to make out a claim for the intentional infliction of emotional distress, it has been stated:

" ' * * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse

his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 375, 6 OBR 421, 426, 453 N.E.2d 666, 671, quoting Restatement of Torts 2d (1965) 73, Section 46, Comment *d.* See, also, *Wells v. Akron* (1987), 42 Ohio App.3d 148, 151, 537 N.E.2d 229, 231.

In reviewing the facts of this case, we cannot find any conduct by the Billow's employees which rises to this level of outrageousness. Billow was simply taking those steps it found necessary to comply with the instructions not to embalm the body. We reach this same result even if Billow failed to adequately inform the appellants that the body would not be in the casket. While the appellants might have reason to be upset, the law cannot protect against, and redress in damages, all mental anguish a person may suffer. *Lynn v. Allied Corp.* (1987), 41 Ohio App.3d 392, 400, 536 N.E.2d 25, 34 (citing *Yeager, supra,* 6 Ohio St.3d at 374–375, 6 OBR at 425–426, 453 N.E.2d at 670–671).

■ When claiming an intentional infliction of mental distress, only that conduct which exceeds "all possible bounds of decency" is actionable. Therefore, applying the standard of review applicable to a summary judgment, we find, in construing the facts most favorably for the appellants, that reasonable minds could reach but one conclusion, that Billow's conduct did not rise to that extreme level of outrageousness from which severe emotional distress would likely result. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273; Civ.R. 56(C).

### (B) Negligent Infliction of Emotional Distress

■ As Ohio has come to recognize claims in negligence for mental suffering where no contemporaneous physical injury is present, certain safeguards have been adopted to prevent frivolous and fraudulent claims. Two requirements are that the emotional injury be both "serious" and "reasonably foreseeable" to permit recovery. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119, 451 N.E.2d 759, 765.

■ To constitute serious emotional distress, the injury must "go beyond trifling mental disturbance" or "mere upset or hurt feelings." *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 40, 514 N.E.2d 430, 438 (Nahra, J., concurring). The standard is whether "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." (Citations omitted.) *Id.* See, also, *Paugh, supra,* 6 Ohio St.3d at 78, 6 OBR at 119, 451 N.E.2d at 765.

In the instant case, all the appellants, except for Christina Sedaker, responded to Billow's interrogatories. While all the responding appellants claimed mental anguish, only the decedent's father, Dean, and sister Lynn received any medical attention. Lynn answered that she was taking "relaxing medication" and Dean received some unspecified treatment. When a party moves for summary judgment, the nonmoving party must "produce evidence on any issue for which that party bears the burden of production at trial." (Citations omitted.) *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. There is no evidence in the record that appellants' injuries were in any way debilitating. As a matter of law, these injuries do not rise to the required level of seriousness.

As to the issue of reasonable foreseeability, the court must "on a case-to-case basis, analyzing all the circumstances, * * * decide what the ordinary man under such circumstances should reasonably have foreseen." *Paugh, supra,* 6 Ohio St.3d at 79, 6 OBR at 120, 451 N.E.2d at 766. Negligence is conduct that involves an unreasonable risk of injury. Whether the risk of injury is foreseeable is determined in light of the possible ramifications of the conduct at the time it is committed and not in hindsight. Prosser & Keeton, Law of Torts (5 Ed.1984) 169–170, Section 31.

■ From the facts in this case it was not reasonably foreseeable that the appellants would suffer serious emotional distress as a result of Billow's failure to inform them that the unembalmed body would not be in the casket. The appellants all knew the decedent would not be embalmed and that the casket would be closed during visitation. While appellants may understandably be upset, it was not foreseeable that they would suffer the serious and debilitating mental anguish necessary to make out a claim for the negligent infliction of emotional distress.

■ Finally, we note appellants' reliance on the case of *Carney, supra.* In *Carney,* the defendant, in digging a new grave, exhumed the bodily remains of the plaintiffs' relative and then deposited those remains in a dump behind the cemetery. The court upheld the judgment of the trial court in awarding damages for the mental suffering of the relatives. The mishandling and desecration of a corpse has long been recognized as an independent tort. *Brownlee v. Pratt* (1946), 77 Ohio App. 533, 537–540, 33 O.O. 356, 358–359, 68 N.E.2d 798, 800–801. See, also, Prosser & Keeton, *supra,* at 362, Section 54. In the present case, there was no desecration of the decedent's body by Billow. Quite the opposite, in keeping the body refrigerated, Billow was both complying with the instructions given it, and protecting the body and the interests of the family.

Therefore, construing the facts in favor of the appellants' position, we hold that as a matter of law a reasonable person must conclude that Billow was not negligent in its conduct.

Appellants' second and third assignments of error are overruled.

### Assignment of Error No. I

"The trial court committed reversible error in granting the defendant's motion for summary judgment because there is a genuine issue of material fact concerning whether the plaintiffs were specifically informed that the body of the deceased would not be placed in the casket during the showing."

Appellants point out that the parties are in disagreement as to whether Billow's employees informed Dean and Robert that the casket would be empty during the calling hours. They assert that summary judgment is improper when any "genuine issue as to any material fact remains to be litigated." *Temple, supra,* 50 Ohio St.2d at 327, 4 O.O.3d at 472, 364 N.E.2d at 274. Civ.R. 56(C). But, as to material facts, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211.

The factual dispute raised in this assignment of error is not material to the outcome of the suit. Even if Billow failed to warn the appellants (all but one of whom were not participants in the arrangements) that the body would not be in the casket, Billow did not intentionally or negligently cause the appellants' mental distress. From our analysis of appellants' second and third assignments of error, considering the facts as alleged by the appellants to be true, the court properly granted Billow's motion for summary judgment.

Accordingly, appellants' assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO, P.J., and COOK, J., concur.