FRYS, Appellee,

v.

CITY OF CLEVELAND, Appellant.

[Cite as *Frys v. Cleveland* (1995), 107 Ohio App.3d 281.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68273.

Decided Nov. 6, 1995.

*Reminger & Reminger Co., L.P.A.,* Donald J. Moracz and *Thomas R. Wolf,* for appellee.

*Sharon Sobol Jordan,* Director of Law, and *Robert J. Lally,* Assistant Director of Law, for appellant.

JAMES M. PORTER, Judge.

Defendant-appellant city of Cleveland appeals from a $10,000 jury verdict and judgment in favor of plaintiff-appellee Patricia Frys arising out of the alleged negligent burial of her mother in the city's Harvard Grove Cemetery. The city contends that the trial court erred in improperly instructing the jury on the cemetery's duty of care and in failing to direct a verdict. We find merit to the appeal, reverse and vacate and enter judgment for the city.

Plaintiff's mother, Carrie Marohn, died on Monday, March 1, 1993. She was to be buried at Harvard Grove Cemetery on March 5, 1993 in a plot next to her own mother. Defendant's foreman opened the grave and discovered that the cement vault adjacent to the scheduled plot had encroached approximately four inches onto Marohn's plot, making the scheduled placement impossible without first moving the encroaching vault. The encroaching vault weighed approximately eight hundred pounds and was not easily moved. Weather related mud conditions and lack of time prevented measures to rectify the situation prior to the scheduled burial.

Realizing that the encroaching vault could not be moved prior to the March 5 burial, the foreman contacted the undertaker and recommended using a temporary grave in the row below and at the foot of the purchased plot so that the funeral could go forward as planned. The foreman explained to the undertaker that the initial burial was meant to be temporary and that the decedent would later be reburied permanently in the scheduled plot. After contacting the family, the undertaker advised that burial in the alternate plot was acceptable so that the funeral could be held as scheduled.

The cemetery is governed by rules and regulations which are promulgated pursuant to the city's Codified Ordinances 557.34. That section states that if "for

any reason the grave cannot be opened where specified, the cemetery may open in such location on the lot as deemed best and proper so as not to delay the funeral." The foreman was aware of these rules and testified that he was acting in conformance with them.

Plaintiff testified that she received a phone call from the undertaker late Thursday afternoon, March 4, 1993; that he advised her that her mother could not be buried in the scheduled plot the next day because of an encroaching vault; that her mother was going to be buried in a plot in the row below, *i.e.*, at the foot of her grandmother's plot; but that she was not advised that this was only a temporary burial site. Whether or not plaintiff knew of the temporary plan beforehand, the day after the burial she began discussions with the cemetery foreman to arrange the reburial.

She called the foreman five or six times to inquire when her mother would be moved to the scheduled plot. She was told that her mother's vault would be moved when the weather improved and when the cemetery was able to schedule the work with the backhoe operator. The mother was buried permanently in the scheduled plot next to her own mother on March 17, 1993 during blizzard conditions. Plaintiff was distressed with the muddy conditions of both the initial and reburial sites and the tracking left by the backhoe.

Plaintiff was present when the permanent burial took place. When asked whether she ever relived or had nightmares about witnessing the reburial, plaintiff testified that, "It's a good feeling. It's not a damaged feeling." She nevertheless claimed that the situation made her and her family tense and upset for "a while" while conceding that the reburial was performed in a practical manner.

Plaintiff experienced some sleeplessness and took sleeping pills after her mother's burial. Although she saw a psychiatrist once in April 1994, more than one year later, there was no expert testimony linking the 1994 visit and the burial events. Plaintiff acknowledged that the visit was occasioned, at least in part, by the fact that her husband was suffering from cancer at the time and died in May 1994.

On June 24, 1993, plaintiff filed suit alleging negligence and intentional and negligent infliction of emotional distress. On June 6, 1994, the trial court granted the city's motion for summary judgment in part, dismissing with prejudice the intentional and negligent infliction of emotional distress claims. A jury trial was had on the negligence claim on November 15, 1994. During the course of trial, the trial court referred to plaintiff's negligence claim as one for "wrongful burial" and instructed the jury that liability could be premised upon the claimed failure to provide a "proper and dignified" burial. Defendant's motions for a directed verdict were overruled. The jury returned a plaintiff's verdict for $10,000.

Judgment was entered thereon on November 21, 1994 from which a timely notice of appeal was filed.

We will address the city's two assignments of error together as both relate to the same legal issue:

"I. The trial court erred in the instruction describing appellant's duty of care.

"II. The trial court erred in failing to direct a verdict for appellant."

The city moved for a directed verdict at the end of plaintiff's opening statement, at the end of plaintiff's case and at the close of all the evidence. We believe that the plaintiff failed to establish the essential elements of a negligence claim and that a directed verdict should have been granted.

It is first important to delineate plaintiff's causes of action in this case. The complaint set forth three claims: ordinary negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. The court withdrew intentional and negligent infliction of emotional distress from the jury because "plaintiff does not have an expert to say that her emotional distress is severe and debilitating." The court submitted the case to the jury on a theory of "wrongful burial," *i.e.,* that defendant owed the plaintiff's decedent a duty to provide a dignified and proper burial, for the breach of which plaintiff could recover for emotional distress. The jury was so instructed and returned its verdict of $10,000 based thereon. We find the court improperly submitted the case to the jury and a directed verdict should have been granted.

■ Ohio law has long recognized "a cause of action for abuse of a dead body," which would include mishandling of a dead body and desecration of a grave. *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 32, 514 N.E.2d 430, 431–432, citing *Brownlee v. Pratt* (1946), 77 Ohio App. 533, 537–538, 33 O.O. 356, 358, 68 N.E.2d 798, 800–801. In *Carney,* an ancestor's remains were deliberately dug up and thrown on a refuse heap to make way for another coffin. This court found that plaintiff had "presented a *prima facie* case of desecration of a grave"—an independent claim. *Id.* at 40, 514 N.E.2d at 438. Both compensatory and punitive damages were affirmed. Abuse of a corpse is also a criminal offense. R.C. 2927.01.

■ In more recent years, Ohio law has also come to recognize the tort of negligent infliction of emotional distress without a contemporaneous physical injury. In such a case, however, "the emotional injuries sustained must be found to be both serious and reasonably foreseeable, in order to allow a recovery." *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph three of syllabus, followed in *Carney,* 33 Ohio App.3d at 33–34, 514 N.E.2d at 432–433.

The application of this rule to the case at hand is well illustrated in *Davis v. Billow Co. Falls Chapel* (1991), 81 Ohio App.3d 203, 610 N.E.2d 1024, where the funeral home was found not to be liable for failure to place an unembalmed body in a closed casket. The family was not told that the body was not in the casket during the viewing hours. The court stated at 207–208, 610 N.E.2d at 1027:

"As Ohio has come to recognize claims in negligence for mental suffering where no contemporaneous physical injury is present, certain safeguards have been adopted to prevent frivolous and fraudulent claims. Two requirements are that the emotional injury be both 'serious' and 'reasonably foreseeable' to permit recovery. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 78, 6 OBR 114, 119, 451 N.E.2d 759, 765.

"To constitute serious emotional distress, the injury must 'go beyond trifling mental disturbance' or 'mere upset or hurt feelings.' *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 40, 514 N.E.2d 430, 438 (Nahra J., concurring). The standard is whether 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.' (Cases omitted.) *Id.* See, also, *Paugh, supra,* 6 Ohio St.3d at 78, 6 OBR at 119, 451 N.E.2d at 765.

" * * * *

"From the facts in this case it was not reasonably foreseeable that the appellants would suffer serious emotional distress as a result of Billow's failure to inform them that the unembalmed body would not be in the casket. The appellants all knew the decedent would not be embalmed and that the casket would be closed during visitation. While appellants may understandably be upset, it was not foreseeable that they would suffer the serious and debilitating mental anguish necessary to make out a claim for negligent infliction of emotional distress."

In the instant case, the trial court held that the infliction of emotional distress claims were not supported by the evidence, *i.e.*, were not severe and debilitating, and consequently granted summary judgment. There is no appeal from those rulings by the plaintiff. Therefore, unless plaintiff could show desecration or mishandling of a corpse, a directed verdict should have been granted.

█ The essence of plaintiff's claim was that she was not originally advised of the temporary nature of the initial burial, that her mother's body was not permanently interred in the scheduled plot as expeditiously as desired, and that the temporary and permanent grave sites were muddy and unsightly for a period after the burial and reburial. We find no evidence that there was a desecration or abuse of the mother's body. Nor was there any proof of any willful,

intentional or outrageous misconduct on the part of the cemetery in the handling of the corpse.

The trial court mistakenly believed, and repeated to the jurors based on *Carney, supra,* 33 Ohio App.3d 31, 514 N.E.2d 430, that plaintiff had a cause of action for "wrongful burial," that this was a subspecies of the tort of infliction of emotional distress, and that a showing of severe and debilitating psychic injury was not necessary. We find that the trial court misconstrued the *Carney* case.

In *Carney, supra,* this court examined paragraph three of the syllabus in *Paugh v. Hanks, supra,* 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, the case which identified the elements of the tort known as negligent infliction of serious emotional stress. This court acknowledged that negligent infliction of emotional distress must be both serious and reasonably foreseeable. We identified certain factors to be considered in determining whether serious emotional harm is reasonably foreseeable. *Carney* at 33, 514 N.E.2d at 433.

In the instant case, the trial court repeatedly held that plaintiff did not suffer the severe and debilitating emotional injury necessary to sustain a cause of action for infliction of serious emotional distress required by *Paugh* and *Carney:*

"The problem with the negligent and intentional infliction of emotional distress claims is [that] they just can't meet the stringent requirements of those specific torts." See, also, *Woods v. Aurora Casket Co.* (Aug. 27, 1991), Hancock App. No. 5–90–54, unreported, at 3, 1991 WL 217714 (water leaking into a casket did not cause decedent's relatives severe and debilitating injury described as depression, upset and sleeplessness).

We do not find from a careful review of the reported Ohio cases a cause of action for wrongful burial. Nor is there a cognizable duty to provide a proper and dignified burial, aside from appropriate contractual obligations which are not at issue here.

Furthermore, the plaintiff failed to show the standard of care that was breached by the cemetery under the exigent circumstances that existed. The rules and regulations of the cemetery specifically permitted the opening and use of an alternative grave site when the specified site could not be used. Plaintiff produced no evidence as to the standard of care that must be observed by the cemetery under such conditions. Nor was there evidence of what ordinary care is required when a grave site is muddy or unsightly due to weather conditions for a short period of time following the burial or pending the reburial.

There was no proof that the cemetery's conduct constituted the outrageous or disrespectful type of conduct necessary for the recognized tort of mishandling or desecration of a corpse.

The defendant city's Assignments of Error I and II are sustained.

The judgment is reversed; judgment is entered for appellant.

*Judgment accordingly.*

MATIA, P.J., concurs.

KARPINSKI, J., dissents.

KARPINSKI, Judge, dissenting.

I respectfully dissent. The majority opinion reversing the jury verdict is not supported by the law or facts.

The record demonstrates that, despite three days' advance notice, the cemetery waited until the last minute to prepare decedent's final resting place adjacent to her mother. Decedent's family and funeral director were notified after the wake, the evening before the scheduled burial ceremony, that an encroaching vault was discovered on decedent's burial plot. Rather than preparing the site, the cemetery foreman informed the funeral director that decedent could be buried at the foot of her mother's grave instead of in the family plot adjacent to her. Four witnesses, including the funeral director, testified that the cemetery did not provide any other options, such as to delay the burial, and did not indicate that the proposed burial spot was only temporary.

Decedent was buried the following morning in a hastily prepared site which was not at the foot of her mother. The family's plans to provide a common gravestone for decedent and her mother, moreover, could no longer be completed. When the decedent's family asked the cemetery foreman whether something could be done about decedent's burial site, they were misinformed that six or seven bodies would have to be moved to bury decedent in the correct spot next to her mother. The gravestone company intervened and, with the family, persisted until arrangements were ultimately made to bury decedent in the family plot. In short, the manner in which the cemetery resolved the problem was improper at every stage. And this problem was twofold. The decedent was not buried where initially scheduled. Nor was she buried in the location which the cemetery described as an alternative.

Decedent's daughter happened to discover decedent's body being disinterred and reburied while driving by the cemetery twelve days after the original burial. The cemetery foreman admitted that the cemetery had the duty to bury people with "respect and dignity" and that he had promised to inform the family about the reburial, but had failed to call them prior to doing so. The entire project of disinterring decedent, moving the encroaching vault, and reburying the decedent in the family plot took less than five hours. Under the circumstances, the jury could find that the preparations could have been completed prior to the original burial so that no reburial was necessary.

This court of appeals has, contrary to the majority opinion, specifically recognized a cause of action for wrongful interment or burial under Ohio law. *McCracken v. Ziehm* (App.1925), 3 Ohio Law Abs. 573. The *McCracken* court reversed a trial court judgment against the decedent's family and rejected the precise arguments made by the majority in this case. Specifically, this court previously stated malice or wantonness are not elements of this tort and the decedent's family may recover damages without proving severe emotional distress.[1] The trial court did not err in following the law announced by this court in *McCracken*. The majority does not cite, apply, or distinguish *McCracken*, but reaches precisely the opposite result by "reversing and vacating" the jury verdict for plaintiff and entering judgment for defendant.

When it recently recognized a cause of action for infliction of emotional distress, the Ohio Supreme Court expanded Ohio common law but did not sound the death knell for the established tort of wrongful interment or burial. See *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 34–35, 514 N.E.2d 430, 433–434, fns. 4, 5. I believe that Ohio law recognizes, and should continue to recognize, that grieving relatives are uniquely vulnerable when their newly deceased family members are mishandled and wrongfully interred or buried. Decedent's family should not have had to endure this ordeal. Therefore, I respectfully dissent from the majority opinion.

---

1. I note that *McCracken* also saw the issue to be more likely one of principle than monetary compensation in stating that when severe emotional distress is not involved nominal damages are appropriate. In the case at bar, however, the cemetery never challenged the amount of damages awarded.