# FILED

**November 10, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE


| | |
|---|---|
| **PAM CLARK and TONYA PILOTE,** | ) |
| **Individually and as next of kin and** | ) |
| **best friend of EUNICE BROWN,** | ) |
| | ) |
| Plaintiffs/Appellants, | ) **Davidson Chancery No. 97-2932-I** |
| | ) |
| **VS.** | ) **Appeal No. M1998-00160-COA-R3-CV** |
| | ) |
| **SERVICE CORPORATION** | ) |
| **INTERNATIONAL and WOODLAWN** | ) |
| **MEMORIAL PARK, INC.,** | ) |
| | ) |
| Defendants/Appellees. | ) |


APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE
THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


**STEVE NORTH**
**MARK NORTH**
Madison, Tennessee
Attorneys for Appellants


**SCOTT D. CAREY**
**BAKER, DONELSON, BEARMAN & CALDWELL**
Nashville, Tennessee
Attorney for Appellees

**AFFIRMED IN PART, REVERSED IN PART
AND REMANDED**

                                                           **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Pam Clark and Tonya Pilote (hereafter collectively referred to as "Plaintiffs") have appealed from an order of the trial court that denied a motion to amend their complaint, and that granted summary judgment to Service Corporation International (hereafter "Service Corp.") and to Woodlawn Memorial Park, Inc. (hereafter "Woodlawn") in this case, which stems from Woodlawn's mistaken burial of another person's remains at a cemetery plot to which their grandmother, Eunice Brown, had possessed interment (burial) rights. Based upon the following, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

This lawsuit against Service Corp. and Woodlawn (hereafter collectively referred to as "Defendants") was originally commenced on August 29, 1997. Prior to any filing of a responsive pleading by Defendants, Plaintiffs filed a "First Amended Complaint,"[1] which demanded, among other things, "that at a hearing set ... on September 30, 1997, a mandatory injunction be issued requiring Defendants to vacate Eunice Brown's burial plot by removing the remains from Eunice Brown's grave and to provide proper burial for Eunice Brown ...." Plaintiffs' First Amended Complaint further asserted claims against Defendants based upon breach of contract, negligence, and trespass, and sought damages

based upon "mental injury, emotional distress, pain and suffering, and incurred attorney's fees and loss of enjoyment of life."

On September 30, 1997, Plaintiffs and Defendants jointly filed various written stipulations of fact, and the trial court heard arguments from counsel as to Plaintiffs' claim for injunctive relief. The written stipulations stated the following:

1. On January 3, 1968 Eunice Brown and her husband purchased [interment rights in] the lots in the Woodlawn Memorial Park known and specified as Atonement Garden 129C-3 and 4.

2. Mr. Brown died in 1972, and shortly thereafter a headstone for both graves was placed on the grave with the name "Brown" at the top and with Eunice Brown's name on the left (plot 129C-3) and Hugh Clifford Brown's name on the right (plot 129C-4).

3. On August 16, 1997 Eunice Brown died.

4. As of August 16, 1997 the headstone located at the [Brown's] burial plots ... still listed Mr. Brown in plot 129C-4 and had Eunice Brown's name for plot 129C-3.

5. When the staff at Woodlawn Memorial Park dug the grave at that location for burial, they discovered a burial vault was already located at plot 129C-3.

6. The headstones for the plots directly adjacent to those purchased by the Brown[s] ... have headstones indicating that [members of] the Gaw family [are/were] buried there. Atonement Garden 129C-1 has a headstone that indicates that Jessie Gaw is buried at that location. Actually, that grave is empty. Mr. Gaw died in 1980.

7. The headstone at 129C-2 indicates that Thelma Gaw is buried there. Mrs. Gaw died in 1971.

. . . .

9. [As of September 30, 1997,] the remains of Eunice Brown [were] located in a mausoleum awaiting final burial.

10. Under her contract with Woodlawn, Eunice Brown's proper burial place is Atonement Garden 129C-3. At [that] time that grave [was] occupied by someone else's remains.

Various documents were attached to the written stipulations that were agreed to as being authentic and admissible. These documents included, among other things, a written agreement dated January 3, 1968, whereby the Browns agreed to make monthly installment payments in consideration for two "pre-need interments" and two "adult interment spaces."

On October 8, 1997, the trial court entered a written order that stated the following:

[T]he Court finds as follows: that the identity of the remains in Plot 129C-3 is uncertain; that members of the Gaw family have not been made a party to this lawsuit and that all interested parties are not before this Court; ... that the Defendants in this case are not the

same parties as created this situation; and that Plaintiffs will not suffer immediate and irreparable harm if their request for a mandatory injunction is denied. It is therefore ORDERED that Plaintiffs' Request for a Mandatory Injunction ... is denied; that the next of kin to the decedent currently buried in Plot 129C-3 is an interested, indispensable party and that Plaintiffs are granted leave to and shall amend their Complaint to bring said interested party before the Court; ... and that all other matters are reserved.

Accordingly, on November 19, 1997, Plaintiffs filed a "Second Amended Complaint" that named Bobby Gaw, Jimmy Gaw, and Averett Gaw as "interested parties," and alleged that said persons "are the sons and next of kin of Jessie Gaw and Thelma Gaw, deceased."[2] The Second Amended Complaint further explained, "It is the Plaintiffs' belief that the cemetery mistakenly buried the remains of either Jessie Gaw or Thelma Gaw in Atonement Garden 129C-3." Accordingly, Plaintiffs again sought injunctive relief "requiring Defendants to vacate Eunice Brown's burial plot ... and to provide proper burial for Eunice Brown ...." Plaintiffs' Second Amended Complaint also again asserted claims against Defendants based upon breach of contract, negligence, and trespass, and sought damages based upon "mental injury, emotional distress, pain and suffering, and incurred attorney's fees and loss of enjoyment of life."

On January 15, 1998, after Bobby Gaw, Jimmy Gaw, and Averett Gaw had been served with a summons and the Second Amended Complaint and had failed to file any answer, Plaintiffs filed a "motion for default" against the Gaws. The trial court thereafter granted Plaintiffs' motion, and ordered that the Gaws be deemed to "have no interest in this lawsuit and no interest in determining whether the remains of Eunice Brown are to be buried in Plot 129C-3." As such, Plaintiffs and Defendants submitted an agreed order that provided,

> [Woodlawn] shall be authorized to disinter the remains of the body currently located in Plot 129C-3 (believed to be Mr. Jessie Gaw).
> . . . .
> After the vault and remains of the individual currently buried at Plot 129C-3 have been fully removed from that location, the parties agree and expressly authorize [Woodlawn] to inter the body of Eunice Brown at Plot 129C-3.

This agreed order was entered by the trial court on March 23, 1998.

On July 2, 1998, Defendants filed an answer to Plaintiffs' Second Amended Complaint and moved for summary judgment. The motion for summary judgment set forth three grounds upon which Defendants relied to support their motion:

1. Plaintiffs do not state a cause of action against defendant [Service Corp.] and therefore [Service Corp.] should be dismissed as a matter of law.
2. There is no triable issue on which Defendants could be held liable for Plaintiffs' claim of negligent infliction of emotional distress. Plaintiffs have not alleged any facts nor offered any expert medical or scientific proof, by affidavit or otherwise, that the alleged negligence of Defendants has proximately caused Plaintiffs "severe emotional injury" as required [for] this tort.
3. Plaintiffs have failed to establish their right to sue as third-party beneficiaries to the original agreement between Hugh Clifford Brown and wife, Eunice Brown and Woodlawn. In the alternative, Plaintiffs have failed to show any damages arising from the alleged breach of contract between Woodlawn and Mr. and Mrs. Brown.

In accordance with Rule 56.03 of the Tennessee Rules of Civil Procedure, Defendants' motion was accompanied by a separate "statement of the material facts as to which [Defendants contend] there is no genuine issue for trial." *See* Tenn. R. Civ. P. 56.03. Thereafter, Plaintiffs filed their response to Defendants' statement of material facts. The following summary of additional facts (material or otherwise) include those facts "as to which ... there is no genuine issue for trial" based upon our review of these pleadings,[3] and include those facts viewed most favorable to Plaintiffs based upon our review of " the pleadings, depositions ... and admissions on file, together with the affidavits."[4]

The Browns' January 3, 1968 installment purchase agreement originally contemplated the pre-payment for two interment spaces (plots 129C-3 and 129C-4) and for two interments. Mr. Brown died and was buried in 1972. On March 23, 1972, "Woodlawn Memorial Park of Nashville, Inc." executed and issued a document which conveyed the burial rights for these two plots. On August 3, 1982, "Woodlawn Funeral Home, Inc." executed and issued to Mrs. Brown a "certificate" that referenced the original 1968 installment purchase agreement, and that recognized that the full purchase price of her pre-need interment had at that point been paid. Thereafter, on August 30, 1982, Mrs. Brown entered into another contract with "Woodlawn Funeral Home, Inc." that was titled "Agreement for Pre-Paid Funeral." This funeral agreement was, again, an installment contract. This new agreement,

however, provided for the pre-payment of funeral services and various merchandise, including a pre-selected casket. This funeral agreement expressly excluded any interment fee (which had already been paid through the prior agreement).

The Gaws possessed the interment rights to plots 129C-1 and 129C-2. Thelma Gaw, whose headstone is located at 129C-2, died in 1971. Jessie Gaw, whose headstone is and was located at 129C-1, died in 1980. His remains, however, were mistakenly buried at 129C-3. Prior to Mrs. Brown's death, however, Woodlawn was not aware of the fact that Mr. Gaw had been mistakenly buried at 129C-3. In fact, Woodlawn's records clearly (and mistakenly) reflect that Mr. Gaw had been buried at 129C-1. It was not until Woodlawn started opening the grave after Mrs. Brown's death, which had occurred on Saturday, August 16, 1997, that Woodlawn became aware of this problem.

Immediately after Mrs. Brown's death, her funeral and burial was scheduled for Monday, August 18, 1997. After Woodlawn discovered the error, two Woodlawn employees met with Plaintiffs, who are both granddaughters of Mrs. Brown, and informed them of the problem. In order to allow the funeral services and burial to go forward as scheduled, Woodlawn offered and suggested as one possible solution to bury Mrs. Brown's remains in another grave plot that was fairly near plots 129C-3 and 129C-4, and to thereafter disinter Mr. Brown's remains and reinter them in a grave next to Mrs. Brown's remains at a time convenient for the family. Initially, Plaintiffs agreed to this solution and completed all necessary and appropriate paperwork to effectuate this solution. On Sunday, August 17, 1997, however, Plaintiffs returned to Woodlawn Memorial Park and informed Woodlawn that they wanted their grandmother's remains to be buried in plot 129C-3. Woodlawn explained to Plaintiffs that the remains then located at 129C-3 could not be disinterred without proper authority, *i.e.*, by consent from Mr. Gaw's next of kin or by appropriate legal process. Woodlawn, however, offered to temporarily entomb Mrs. Brown's body in a mausoleum until the remains located at plot 129C-3 could be lawfully disinterred. This solution would allow for Mrs. Brown's funeral services to proceed as

planned. Plaintiffs agreed and Mrs. Brown's funeral proceeded as scheduled on Monday, August 18, 1997.

Thereafter, Woodlawn attempted to contact family members of Jessie Gaw to obtain permission for the disinterment of Mr. Gaw's remains from plot 129C-3 and for the reinterment of his remains at plot 129C-1. Plaintiffs, however, commenced this suit on August 29, 1997, seeking, among other things, injunctive relief to compel Woodlawn to disinter Mr. Gaw's remains. Ultimately, after entry of the agreed order, whereby Plaintiffs and Defendants agreed to the disinterment of the remains located at plot 129C-3 and to the subsequent interment of Eunice Brown's remains at that location, Woodlawn disinterred the remains that were improperly buried at plot 129C-3, and reinterred Eunice Brown's remains at plot 129C-3. The reinterment of Mrs. Brown's remains occurred on April 2, 1998 (approximately seven and a half months after Mrs. Brown's death).

On July 31, 1998, Plaintiffs moved again to amend their complaint, and filed a proposed "Third Amended Complaint." In addition to the prior claims asserted against Defendants, which had included breach of contract, negligence, and trespass, Defendants sought to assert claims of fraud and of violations of the Tennessee Consumer Protection Act. Also, Plaintiffs sought again to increase their demand for compensatory damages (this time from $200,000 to $500,000), to receive treble damages and attorney fees, and to receive punitive damages in the amount of $1,000,000.

Both Defendants' motion for summary judgment and Plaintiffs' motion to amend were heard by the trial court on August 14, 1998, after which the trial court entered an written order granting Defendants' motion for summary judgment and denying Plaintiffs' motion to amend. Thereafter, Plaintiffs appealed. On appeal, Plaintiffs' brief lists the following as issues for consideration by this Court:

1. Whether Defendants presented sufficient affirmative evidence to justify a summary judgment?
2. Whether a genuine issue of material fact remains as to whether Plaintiffs suffered

damages resulting from Defendants' mistake?

3.  Whether Plaintiffs, the next of kin, may recover for breach of a pre-need funeral and cemetery contract?

4.  Whether a genuine issue of material fact remains as to Plaintiffs' allegation of trespass?

5.  Whether the trial court properly denied Plaintiffs' motion for leave to amend their complaint?


## II.  Analysis


### A.  Service Corp.


Before reviewing the separate theories upon which Plaintiffs seek relief (*i.e.*, negligent infliction of emotional distress, breach of contract, and trespass), we find it appropriate first to address the trial court's grant of summary judgment as related specifically to Service Corp.  In Plaintiffs' complaint, they state,

> Upon information and belief Woodlawn ... is a Tennessee corporation operating a cemetery and funeral home in Davidson County, Tennessee ....  Service Corporation International owns and operates Woodlawn ... and Woodlawn Cemetery and Funeral Home.

The undisputed proof within the record, however, reveals that, while Service Corp. might have some ownership interest in Woodlawn, the two entities are separate, and it is Woodlawn that owns and operates the subject cemetery and funeral home.  Service Corp. is incorporated in Texas with its principal place of business in Houston, Texas, and it did not employ any persons in Tennessee or provide any funeral or burial services in Tennessee at any time pertinent to this case.  Moreover, we note that Plaintiffs' brief does not even appear to challenge the trial court's grant of summary judgment to Service Corp.[5]  Accordingly, we affirm the trial court's grant of summary judgment as to Service Corp.


### B.  Negligent Infliction of Emotional Distress

We next address Defendants' challenge to Plaintiffs' negligent infliction of emotional distress claim. On appeal, Defendants' brief asserts that Plaintiffs cannot make out a *prima facie* case as to any negligent infliction of emotional distress claim because: (1) "a reasonable person normally constituted would be able to cope adequately with the discovery that the burial plot thought to be reserved by their grandmother was unavailable at the time of her death"; and (2) "Plaintiffs' claimed injuries are not supported by any expert medical or scientific proof." Defendants' argument stems from Tennessee law governing claims for the negligent infliction of emotional distress. Such law was set forth by the Tennessee Supreme Court in <u>Camper v. Minor</u>, 915 S.W.2d 437 (Tenn. 1996), wherein the supreme court stated the following:

> [W]hat is required to make out a prima facie case? .... [T]he plaintiff must present material evidence as to each of the five elements of general negligence--duty, breach of duty, injury or loss, causation in fact, and proximate, or legal, cause, *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn.1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn.1993)--in order to avoid summary judgment. Furthermore, we agree that in order to guard against trivial or fraudulent actions, <u>the law ought to provide a recovery only for "serious" or "severe" emotional injury</u>. *Burgess v. Superior Court (Gupta)*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 618, 831 P.2d 1197, 1200 (1992); *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 653 (Tex.1987). A <u>"serious" or "severe" emotional injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."</u> *Rodrigues v. State*, 52 Haw. 156, 283, 472 P.2d 509, 520 (1970); *Paugh v. Hanks*, 6 Ohio St.3d 72, 77-78, 451 N.E.2d 759, 765 (1983); *Plaisance v. Texaco, Inc.*, 937 F.2d 1004, 1010 (5th Cir.1991); *Prosser and Keeton on the Law of Torts*, § 54, at 364-65, n. 60. Finally, we conclude that <u>the claimed injury or impairment must be supported by expert medical or scientific proof</u>. *See Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 766-67 (1974) ("the plaintiff should be permitted to prove medically the damages occasioned by his mental responses to defendant's negligent act").

915 S.W.2d at 446 (emphasis added). In this case, Defendants' arguments to support their motion for summary judgment (as related to Plaintiffs' negligent infliction of emotional distress claim) are limited solely to the "'serious' or 'severe' emotional injury" element of Plaintiffs' claim.[6]

In Tennessee, conduct upon which a claim for mental or emotional distress is based must be "extreme" and "outrageous" in order for the plaintiff to recover. *See* <u>Wood v. Woodhaven Memory</u>

Gardens, Inc., 1991 WL 112273, at *5 (Tenn. App. 1991) (citing Medlin v. Allied Inv. Co., 398

S.W.2d 270, 274 (Tenn. 1966)).  This conduct is described in the Restatement (Second) of Torts §46

comment d (1965):

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous.  It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

Id; *see, e.g.,* Medlin, 398 S.W.2d at 274 (Tenn. 1966); Bain v. Wells, 936 S.W.2d 618, 622-623

(Tenn. 1997); Goldfarb v. Baker, 547 S.W.2d 567, 568-569 (Tenn. 1977); Blair v. Allied Maintenance

Corp., 756 S.W.2d 267, 273 (Tenn. App. 1988); Holt v. American Progressive Life Ins. Co., 731

S.W.2d 923, 926-927 (Tenn. App. 1987); Bryan v. Campbell, 720 S.W.2d 62, 64-65 (Tenn. App.

1986).  Therefore, we must determine whether the conduct alleged  is so extreme and outrageous as to

support a claim for negligent infliction of emotional distress. *See* Dunn v. Moto Photo, Inc., 828 S.W.2d

747, 752 (Tenn. App. 1991) (stating that "[i]t is for the court to determine, in the first instance, whether

the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit

recovery....")

     In Wood v. Woodhaven Memory Gardens, Inc., 1991 WL 112273 (Tenn. App. 1991), the

plaintiffs sought damages for emotional distress under the Tennessee Consumer Protection Act.  The

defendant cemetery, Woodlawn Memory gardens, refused to allow the plaintiffs to place a full-sized

memorial on their son's grave, after allegedly telling the plaintiffs that the cemetery allowed such

memorials to be placed on grave sites.  The plaintiffs claimed that Woodlawn's eventual refusal caused

ths plaintiffs "extreme grief, emotional anguish and mental distress." Id. at *3-4.

The Court examined the conduct underlying the claim for damages for emotional distress. While noting that the burial of a child is a highly emotional issue, the Court found that the plaintiffs had failed to show that Woodlawn's refusal to allow the memorial was "outrageous" and that it caused serious mental injury. The appellate court agreed with the trial court's finding that "the defendant has done nothing that would even closely measure up to the tort of outrageous conduct." Id. at *5.

In Frys v. City of Cleveland, 668 N.E.2d 929 (Ohio Ct. App. 1995), the plaintiff alleged, *inter alia*, intentional and negligent infliction of emotional distress arising out of the burial of her mother in a city-owned cemetery. Id. at 931. The burial was scheduled four days after she died; the deceased was to be buried in a plot next to her own mother, the plaintiff's grandmother. However, while preparing the deceased's plot for burial, the cemetery discovered that an adjacent vault encroached on the deceased's plot. The encroaching vault had to be moved before the burial could take place, thus delaying the scheduled burial. The cemetery told the deceased's family that the deceased would be buried temporarily in another location and that she would later be reburied in the family plot. The cemetery later reburied the plaintiff's deceased mother in the family plot. *See* Id. at 930-931.

The plaintiff sued the cemetery, alleging ordinary negligence, intentional infliction of emotional distress and negligent infliction of emotional distress. *See* id. at 931. The trial court did not allow the plaintiff's claims for intentional and negligent infliction of emotional distress to go to the jury because the plaintiff produced no expert proof that her emotional distress was severe. *See* id. at 931. The trial court allowed the plaintiff to proceed on a theory of "wrongful burial," for which the jury awarded damages for emotional distress. *See* id. at 931. The appellate court considered all of these theories.

The appellate court found that "severe and debilitating emotional injury" was necessary for " wrongful burial" as well as for negligent infliction of emotional distress. *See* id. at 932-933. Under this standard, the appellate court found that the cemetery's actions did not constitute "outrageous" conduct.

*See* id. at 933. The court noted that the cemetery acted quickly and appropriately when it realized that the vault has been buried in the wrong location, and that it followed the applicable rules and regulations in selecting an alternate grave site when the specified site could not be used. *See* id. at 933. The court found that the cemetery had not breached the standard of care under the circumstances of the case. *See* id. at 933. The court concluded that the cemetery's conduct has not been of the "outrageous" or " disrespectful" type necessary for recovery. *See* id. at 933.

In this case, Woodlawn immediately informed the plaintiffs when it discovered that Mr. Gaw's remains had mistakenly been buried years prior in Mrs. Brown's plot. Woodlawn met with the plaintiffs and suggested the temporary interment of Mrs. Brown's remains in a mausoleum while Mr. Gaw's family was contacted to obtain consent, as required by law, for the disinterment of Mr. Gaw's remains. The plaintiffs agreed, and Mrs. Brown's funeral services proceeded on schedule. Woodlawn eventually obtained authority to disinter Mr. Gaw's remains and Mrs. Brown was then buried in the appropriate plot. Under these circumstances, Woodlawn's conduct cannot be considered "extreme" or "outrageous" and cannot support a claim for negligent infliction of emotional distress. Therefore, the trial court's grant of summary judgment to the defendants on the plaintiff's claim for negligent infliction of emotional distress is affirmed.

### C. Breach of Contract

The next issue stated in Plaintiffs' brief is "whether Plaintiffs, the next of kin, may recover for breach of a pre-need funeral and cemetery contract." In Moore Const. v. Clarksville Dept. of Electricity , 707 S.W.2d 1 (Tenn. App. 1985), this Court recognized that, while intended beneficiaries to a contract may have an independent right to enforce contracts made by others for their benefit, "incidental beneficiaries do not have a similar right." 707 S.W.2d at 8. This Court went on to discuss the circumstances whereby a third party beneficiary can maintain an action on a contract as an intended

beneficiary.

> [I]f recognition of a third party beneficiary's rights is "appropriate to effectuate the intention of the parties" and if there is either an expression in the contract that the contracting parties intended to benefit the third party (the "intent to benefit" test) or proof that the promisor's performance will otherwise discharge a duty owed to a third party beneficiary by the promisee (the "duty owed" test), then the third party beneficiary can maintain an action on the contract.
>
> Since the law presumes that a contract has been executed for the benefit of the parties thereto, a person claiming to be an intended beneficiary has the burden of proving from the terms of the contract itself or the circumstances surrounding the contract's execution that he is entitled to recover. *Rutherford County v. City of Murfreesboro*, 202 Tenn. 455, 459-60, 304 S.W.2d 635, 637 (1957), and *Sherrill v. Erwin*, 31 Tenn.App. 663, 673, 220 S.W.2d 878, 882 (1949).   Each case must be decided on its own unique facts considered in light of the specific contractual agreements and the circumstances under which they were made.

*Id.* at 9-10 (footnote omitted).  Accordingly, under <u>Moore</u>, a person claiming to be an intended beneficiary must establish either:  (1) that there exists "an expression in the contract that the contracting parties intended to benefit the third party"; or (2) that "the promisor's performance will discharge a duty owed to [the] third party beneficiary by the promisee."  Upon review of the record in this case, we find that there exists no genuine issue as to whether either of these conditions exist.  There was no expression in the original agreements that the Browns specifically intended to benefit either Clark or Pilote, and no proof suggests that Woodlawn's performance pursuant to the agreements would discharge "a duty owed" to either Clark or Pilote.  Accordingly, the trial court was correct in granting Woodlawn partial summary judgment as to Plaintiffs breach of contract claims.

### D.  Trespass

The next issue stated in Plaintiffs' brief is "whether a genuine issue of material fact remains as to Plaintiffs' allegation of trespass."  In this case, Plaintiffs have submitted evidence that Eunice Brown possessed the interment (burial) rights to plot 129C-3, and that Jessie Gaw, who was mistakenly buried in plot 129C-3, possessed the interment rights to plot 129C-1, and not 129C-3.  While such an "interment right" may not, of itself, amount to any fee interest in the land, it does create an easement from

which a decedent's heirs may maintain an action for trespass. *See* Boyd v. Ducktown Chemical & Iron Co., 19 Tenn. App. 392, 89 S.W.2d 360, 366 (1935) (recognizing, "[t]he right of burial ... is nothing more than a right of limited use of the land, and it may properly be regarded as an easement").

On appeal, Defendants challenge Plaintiffs' claim of trespass on two grounds.[7] First, they assert that any claim of trespass "was not raised in the Complaint ... and ... was never argued before the Trial Court." We reject this argument, however, as Plaintiffs' Second Amended Complaint (and their prior First Amended Complaint) succinctly alleges, "Woodlawn ... trespassed on Eunice Brown's property." Thereafter, the complaint(s) claim damages "as a result of the trespass and breach of contracts." Moreover, while Plaintiffs' trespass claim may not have been specifically addressed in the trial court during argument on Defendants' motion for summary judgment, the ultimate issue that was raised in the trial court and on appeal was Defendants' entitlement to summary judgment, to which Plaintiffs' trespass claim related.

The second ground upon which Defendants challenge Plaintiffs' trespass claim is that "Plaintiffs fail to state a claim for trespass for which relief can be granted" because "they are unable to provide proof of actual damages." We reject this contention, however, because "[e]very trespass gives a right to at least nominal damages." Price v. Osborne, 24 Tenn. App. 525, 147 S.W.2d 412, 413 (1940); Schumpert v. Moore, 24 Tenn. App. 695, 149 S.W.2d 471, 473 (1940).

For these reasons, we find that there are genuine issues of material fact regarding Plaintiffs' trespass claim and whether it is actionable. Therefore, summary judgment was not proper on this claim. The trial court's grant of summary judgment should be reversed on this issue.

E. Plaintiffs' Motion to Amend

The last issue raised by Plaintiffs in their brief is "whether the trial court properly denied Plaintiffs' motion for leave to amend their complaint." Rule 15.01 of the Tennessee Rules of Civil Procedure provides:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01. In Hall v. Shelby County Retirement Bd., 922 S.W.2d 543 (Tenn. App. 1995), this Court stated the following with reference to Rule 15.01:

> In Tennessee, after a responsive pleading has been served, the denial of a motion to amend the pleadings lies within the sound discretion of the trial court. It will not be reversed absent a showing of an abuse of that discretion. *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. App. 1979); *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. App. 1994). There are several considerations a trial judge should evaluate in determining whether to grant or deny a motion to amend. Among these factors are undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Merriman*, 599 S.W.2d at 559.

Hall, 922 S.W.2d at 546. "[I]n the event the motion to amend is denied, [however,] the trial court must give a reasoned explanation for his action." Henderson v. Bush Bros. & Co., 868 S.W.2d 236, 238 (Tenn. 1993). In this case, Plaintiffs were given a full chance to be heard on their motion to amend,[8] after which the trial court made an express finding "that the trial date in this case [was] set for September 14, 1998 and the motion for the third amendment was filed after the filing of Defendants' Motion for Summary Judgment and the Court is of the opinion that the Motion to Amend would be prejudicial to Defendants ...."

On appeal, Plaintiffs contend that the sole basis upon which the trial court denied Plaintiffs' motion to amend was that the motion to amend was filed after Defendants' motion for summary judgment was filed. While the trial court's order, which is quoted above, reflects that its denial was, *in part*, based upon the mere fact that the amendment was sought after the filing of Defendants' motion for summary judgment, it is clear from the trial court's order that its reasoning was not so limited. The trial

court reasoned that allowance of Plaintiffs' additional causes of action sought to be asserted by Plaintiffs' Third Amended Complaint would be prejudicial to Defendants in light of the timing of Plaintiffs' motion, with the case set for trial shortly thereafter. This reasoning is tantamount to a finding of "undue delay," as prejudice to Defendants would stem from their inability to adequately conduct further discovery relating to Plaintiffs' additional claims. Additionally, we further note that Plaintiffs had already twice previously amended their complaint. In light of the foregoing, we conclude that the trial court did not abuse its discretion in denying Plaintiffs' motion to amend.

### III. Conclusion

Accordingly, we hereby affirm the trial court's grant of summary judgment to Service Corp. We further affirm the trial court's grant of summary judgment as to Plaintiffs' negligent infliction of emotional distress claim and breach of contract claim against Woodlawn. We reverse, however, the trial court's grant of summary judgment as to Plaintiffs' trespass claim against Woodlawn, and remand this case to the trial court for

further proceedings consistent with this opinion. Lastly, we hereby affirm the trial court's

denial of Plaintiffs' motion to amend. Costs on appeal are taxed one-half against Plaintiffs and one-half against Woodlawn, for which execution may issue if necessary.

_____

_____   HIGHERS, J.

CRAWFORD, P.J., W.S.


LILLARD, J.