OPINION
On March 29, 1993, Guernsey Memorial Hospital entered into a contract with appellee, CompHealth, Inc., for the provision of anesthesiology services, including the management of the anesthesiology department. Appellee, James Lowenhagen, was Director of the Physician Group Development Division for appellee CompHealth. In March of 1993, appellee, Cambridge Anesthesia Associates, P.A., was formed to supply the professional staffing for the anesthesiology department. Appellee Lowenhagen was Vice President for appellee Cambridge. An anesthesiologist had to be affiliated with appellee Cambridge in order to provide anesthesiology services to Hospital. On March 29, 1993, Antolin M. Dycoco, M.D., an anesthesiologist, entered into an independent contractor agreement (hereinafter "agreement") with appellee Cambridge to provide services to Hospital. Several months later, all of appellee Cambridge's contracts were assigned to appellee, Kron Anesthesia, P.C. Appellee, Alan Kronhaus, M.D., was Chief Executive Officer for appellee Kron. Appellee Lowenhagen was Chief Operating Officer. On November 11, 1993, appellee Kronhaus terminated the agreement with Dr. Dycoco. As a result, Hospital automatically terminated Dr. Dycoco's staff privileges. Said termination stemmed from questions surrounding Dr. Dycoco's clinical competency based upon allegations made by appellee, Brady B. Stoner, M.D. On January 18, 1994, Dr. Dycoco passed away due to an apparent intracerebral hemorrhage. On December 13, 1994, appellant, Edna Dycoco, as Administratrix of Dr. Dycoco's estate, filed a complaint against Hospital and appellees CompHealth, Cambridge and Stoner. Appellant alleged claims for wrongful death, intentional and negligent infliction of emotional distress, breach of contract, tortious interference with business and contractual relationships and violations of the Valentine Antitrust Act. On January 9, 1996, appellant filed an amended complaint naming appellees Lowenhagen, Kron and Kronhaus as new party defendants. Appellant also filed an additional claim for funeral expenses. On December 30, 1998, appellees CompHealth, Cambridge, Lowenhagen, Kron and Kronhaus filed a motion for summary judgment. By judgment entry filed January 27, 1999, the trial court granted said motion. On February 24, 1999, appellant filed a notice of appeal. Said appeal was assigned Case No. 99CA06. On February 16, 1999, appellee Stoner filed a motion for summary judgment. On March 16, 1999, the trial court granted said motion. On April 8, 1999, appellant filed a notice of appeal. Said appeal was assigned Case No. 99CA10. On April 23, 1999, this court consolidated the two cases. This matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL REVERSIBLE ERROR WHEN IT GRANTED DEFENDANTS-APPELLEES', CAMBRIDGE ANESTHESIA ASSOCIATES, P.A., COMPHEALTH, INC., AND KRON ANESTHESIA, P.C., MOTION FOR SUMMARY JUDGMENT WHICH HELD THAT THESE APPELLEES DID NOT BREACH THEIR CONTRACT WITH APPELLANT'S DECEDENT, ANTOLIN M. DYCOCO, M.D.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL REVERSIBLE ERROR WHEN IT GRANTED DEFENDANTS-APPELLEES', KRONHAUS, LOWENHAGEN, AND STONER, MOTION FOR SUMMARY JUDGMENT WHICH HELD THAT THESES APPELLEES DID NOT ENGAGE IN TORTIOUS INTERFERENCE WITH BUSINESS OR CONTRACTUAL RELATIONSHIPS OF APPELLANT'S DECEDENT, ANTOLIN M. DYCOCO, M.D.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL REVERSIBLE ERROR WHEN IT GRANTED DEFENDANTS-APPELLEES', STONER, KRONHAUS AND LOWENHAGEN, MOTION FOR SUMMARY JUDGMENT WHICH HELD THAT THESE APPELLEES WERE NOT LIABLE AS A MATTER OF LAW FOR THE WRONGFUL DEATH OF APPELLANT'S DECEDENT, ANTOLIN M. DYCOCO, M.D. BY DEFAMING HIM.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL REVERSIBLE ERROR WHEN IT GRANTED ALL DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT WHICH HELD THAT THESE APPELLEES DID NOT INTENTIONALLY INFLICT EMOTIONAL DISTRESS UPON APPELLANT'S DECEDENT, ANTOLIN M. DYCOCO, M.D.
 V. THE TRIAL COURT COMMITTED PREJUDICIAL REVERSIBLE ERROR WHEN IT GRANTED ALL DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT WHICH HELD THAT THESE APPELLEES WHERE NOT LIABLE AS A MATTER OF LAW FOR THE WRONGFUL DEATH OF APPELLANT'S DECEDENT, ANTOLIN M. DYCOCO, M.D.
 VI. THE TRIAL COURT COMMITTED PREJUDICIAL REVERSIBLE ERROR WHEN IT GRANTED ALL DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT WHICH HELD THAT THESE APPELLEES WHERE NOT LIABLE AS A MATTER OF LAW FOR THE FUNERAL EXPENSES INCURRED AS A RESULT OF THE WRONGFUL DEATH CLAIM OF APPELLANT'S DECEDENT, ANTOLIN M. DYCOCO, M.D.
 VII. THE TRIAL COURT COMMITTED PREJUDICIAL REVERSIBLE ERROR WHEN IT GRANTED DEFENDANT-APPELLEE'S, BRADY B. STONER, M.D., MOTION FOR SUMMARY JUDGMENT AS A MATTER OF LAW WITHOUT FIRST ALLOWING APPELLANT THE OPPORTUNITY FOR ADEQUATE DISCOVERY PURSUANT TO OHIO CIV. R. 56(F).
All of appellant's assignments of error challenge the trial court's granting of summary judgment to appellees. Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins (1996),75 Ohio St.3d 447, 448: Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377,1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.
As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35.
 I
Appellant claims the trial court erred in determining appellees CompHealth, Cambridge and Kron did not breach the agreement between the parties. We disagree. Appellant argues Dr. Dycoco was entitled to due process regarding his termination based upon the March 26, 1993 cover letter sent from appellee Lowenhagen to Dr. Dycoco with the agreement: In regards to your independent contractor agreement, I would like to reinforce that both the Hospital and Cambridge Anesthesiology Associates anticipate that you will continue to be a satisfied and productive member of the anesthesiology department until you choose to leave the Hospital. While the contract specifies the conditions under which you would be required to resign from the Medical Staff, I would like to amplify those circumstances here for your comfort. They are as follows:
 * * * (vi) it was felt that you did not demonstrate an acceptable level of clinical competency. In the latter case, we would afford you due process as outlined in the Bylaws of the Medical Staff of Guernsey Memorial Hospital. (Emphasis added.)
See, Appellant's Brief at Exhibit 3A. Appellant challenges the following finding by the trial court in its January 27, 1999 judgment entry:
 Plaintiff `cannot now argue that Dr. Dycoco was misled by the Letter or the statements of Lowenhagen or that the doctor intended to be afforded due process rights "when he could have known the truth by merely looking when he signed." This Court cannot conclude that the parties intended any terms other than those expressed in the Agreement.' Dycoco 96 CA 34 supra at 9. The agreement was executed between the parties on March 29, 1993 and included the following integration clause: 16. Entire Agreement. This Agreement constitutes the entire understanding and agreement between the parties and may not be modified except by a written agreement signed by the parties.
See, Appellant's Brief at Exhibit 4.
 The agreement included the conditions under which Dr. Dycoco "would be required to resign," including the condition cited supra, clinical competency. Conspicuously absent from the agreement is any guarantee of "due process" afforded under the Bylaws of the Medical Staff of Guernsey Memorial Hospital. As we previously noted in Dycoco I, the parol evidence rule precludes the introduction of evidence outside the four corners of a written document: Where the parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions. * * * Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence.
Aultman Hosp. Assn. v. Community Mut. Ins. (1989), 46 Ohio St.3d 51,53.
In Dycoco I at 7, we found "[t]he language of the Agreement clearly and unambiguously states that a Physician's termination is not subject to a due process hearing or review by Guernsey, its Medical Staff, or its Board of Trustees. Therefore, appellant cannot introduce parol evidence to establish a breach of the contract." Appellant argues appellee Lowenhagen was the agent for Hospital, appellee CompHealth and appellee Cambridge and therefore, once appellee Lowenhagen promised due process via his cover letter, he bound appellees CompHealth and Cambridge to such. Appellant points out there was an ambiguity in the agreement otherwise appellee Lowenhagen would not have had to "amplify" the agreement via the cover letter. Upon review, we once again find the integration clause within the agreement and the parol evidence rule preclude the cover letter statement from being a part of the agreement. Based upon our finding of "no ambiguity" in the agreement, we conclude the trial court did not err in granting summary judgment to appellees on the breach of contract claim. Assignment of Error I is denied.
 II Appellant claims the trial court erred in determining there was no genuine issue of material fact regarding appellant's claim for tortious interference with a business relationship. We disagree. In order to establish a claim for tortious interference with a business relationship, a party must show the following: From these two cases, we derive the elements of the tort: (1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages.
Brookside Ambulance, Inc. d.b.a. Rumpf Ambulance Service v. Walker Ambulance Service (1996), 112 Ohio App.3d 150,155-156, citing Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, and A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995),73 Ohio St.3d 1. In its judgment entry of January 27, 1999, the trial court found the following on the issue of tortious interference: The Court finds that Defendants had a contractual right pursuant to their Agreement to `interfere' with Dr. Dycoco's business relationship with Guernsey Memorial Hospital as Cambridge Anesthesiology Associates was `engaged by CompHealth to provide professional staffing for the Anesthesiology Department at Guernsey Memorial Hospital.' See Independent Contractor Agreement. The Court concludes that Defendants were privileged * * *.
Appellant attempts to establish a business relationship between Dr. Dycoco and Hospital by claiming the agreement between appellee CompHealth and Hospital, whereby appellee CompHealth was to manage Hospital's anesthesiology department, created the necessity for Dr. Dycoco and appellee Cambridge to enter into the independent contractor agreement. Without the agreement, Dr. Dycoco would not have been able to perform anesthesiology services at Hospital. Because appellee Cambridge had to hire individuals to perform anesthesiology services at Hospital, those individuals so hired had a business relationship with Hospital. See, Appellant's September 23, 1998 Memorandum in Opposition to Appellees' Motion for Summary Judgment. Appellees' act of terminating Dycoco's agreement resulted in Dr. Dycoco's staff privileges with Hospital being terminated, thereby interfering with the Dycoco/Hospital relationship. We disagree that Dr. Dycoco had a business relationship with Hospital. The independent contractor agreement was between Dr. Dycoco and appellee Cambridge. In terminating said agreement, appellees ended their business relationship with Dr. Dycoco and no longer permitted Dr. Dycoco to perform anesthesiology services at Hospital on behalf of appellee Cambridge. Dr. Dycoco's right to perform anesthesiology services at Hospital was limited and controlled by his agreement with appellee Cambridge and was subordinate to that agreement. Because Dr. Dycoco never had a contractual/business relationship with Hospital, the claim for tortious interference with a business relationship under Brookside must fail. Upon review, we find the trial court did not err in granting summary judgment to appellees on the tortious interference with a business relationship claim. Assignment of Error II is denied.
 III
Appellant claims the trial court erred in determining appellees were not liable for the wrongful death of Dr. Dycoco by way of defamation. We disagree. Appellant agrees any potential claims for defamation abated upon Dr. Dycoco's death. However, appellant argues the wrongful death statute, R.C. 2125.01(A)(1), creates a new cause of action separate and apart from the cause of action for defamation: (A)(1) Except as provided in division (B) of this section, if the death of a person is caused by wrongful act, neglect, or default that would have entitled the injured person to maintain a civil action and recover damages if death had not ensued, the person who would have been liable if death had not ensued or the administrator or executor of the estate of the liable person as that administrator or executor is liable in damages in an action for wrongful death under this chapter * * *. The specific statutory language governing abatement by death of party, R.C. 2311.21, states as follows: Unless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, except actions for libel, slander, malicious prosecution, for a nuisance, or against a judge of a county court for misconduct in office, which shall abate by the death of either party.
Based upon the clear mandate of R.C. 2311.21, we find the trial court did not err in granting summary judgment to appellees on the wrongful death claim. Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in determining appellees were not liable under the intentional infliction of emotional distress claim. We disagree. In Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374, the Supreme Court of Ohio, quoting from Restatement of the Law 2d, Torts (1965) 71, Section 46(1), defined intentional infliction of emotional distress as:
 `[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'
The Yeager court at 374-375 went on to quote comment d from said section to describe the standard of "extreme and outrageous":
 `* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 `The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. * * * There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *'
 In order to establish a claim for intentional infliction of emotional distress, a claimant must demonstrate the following: (1) the defendant either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional harm to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental distress suffered by the plaintiff was serious.
Piro v. Franklin Twp. (1995), 102 Ohio App.3d 130, 142, citing Davis v. Billow Co. Falls Chapel (1991), 81 Ohio App.3d 203,206.
Appellant argues the termination of the agreement without notice or due process satisfies the first and second elements: In the instant case all Appellees falsely accused Dr. Dycoco of incompetence based upon reviews by Kronhaus. Kronhaus, was not an actual party to the contract between CAA and Dr. Dycoco, and he also had no business relationship with CompHealth. * * * Notwithstanding, he contacted Dr. Dycoco, and immediately without providing either a valid peer review process or a due process hearing, fired him. As a result of the termination of the contract with CAA, Dr. Dycoco lost his staff privileges at Guernsey Memorial Hospital, where he had these staff privileges in the Anesthesiology Department since 1985. * * * Further, Dr. Dycoco was denied these due process privileges pursuant to the Guernsey Memorial Bylaws even after he had specifically been assured of them in the March 26, 1993, Cover Letter from Lowenhagen.
Appellant's Brief at 22.
The extreme and outrageous conduct argued sub judice was merely an exercise of the option for termination under the agreement. See, Independent Contractor Agreement at Articles 5 and 8. If one cries out "extreme and outrageous" conduct, one must establish the conduct went beyond all possible bounds of decency and was utterly intolerable in a civilized community. Such was never presented in this case. Appellant merely relied on the acts of appellees without presenting any substantiated facts or evidence. Upon review, we find appellees exercised an option under the agreement and as a result, the agreement with Dr. Dycoco was terminated as well as his staff privileges with Hospital. These results were included in and anticipated by the express language in the agreement. The trial court did not err in finding in favor of appellees on the intentional infliction of emotional distress claim. Assignment of Error IV is denied.
 V, VI
Appellant claims the trial court erred in determining appellees were not liable under the claims for wrongful death and funeral expenses. We disagree. As we found in Dycoco I, and have also found herein no causes of action for breach of contract, tortious interference with a business relationship, defamation and intentional infliction of emotional distress, no wrongful act was committed as required by R.C.2125.01(A)(1). Therefore, the claims for wrongful death and funeral expenses do not have any merit. Upon review, we find the trial court did not err in finding in favor of appellees on these claims. Assignments of Error V and VI are denied.
 VII
Appellant claims the trial court erred in not granting her motion for further discovery in the claim against Dr. Stoner. We disagree. Appellant properly points out that under the standard for a motion for summary judgment, all discovery should be complete. Appellant argues because of a stay order regarding the claims against Dr. Stoner, implemented by the Court of Common Pleas of Franklin County, Ohio in a case before it concerning the liquidation of the PIE Mutual Insurance Company of which Dr. Stoner was an insured, appellant was precluded from fully discovering the claims against Dr. Stoner. The granting or denying of a motion involving discovery is within the sound discretion of the trial court. Manofskey v. Goodyear Tire and Rubber Co. (1990), 69 Ohio App.3d 663. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. By judgment entry filed March 16, 1999, the trial court denied the request for further discovery, finding as follows: This case comes before the Court for non-oral hearing on Motion for Summary Judgment of Defendant Brady B. Stoner, M.D. and Motion of Plaintiff for the Vacating of the Non-Oral Hearing Date of March 11, 1999 and to Stay the Date for Ruling Upon Defendant's, Brady Stoner, M.D., Motion for Summary Judgment Until After Remand from the Court of Appeals and then the Completion of Discovery.
The Court finds that the instant case was filed December 13, 1994 and has been, therefore, on-going for in excess of four years. The Court further finds that the issues presented by Defendant, Brady Stoner, M.D., are substantially similar to those issues now on appeal. The Court concludes that in the interests of judicial economy, Plaintiff's Motion for Stay must be and hereby is, DENIED.
During the course of the case, appellant never requested leave from the trial court to permit discovery of Dr. Stoner until the thirteenth hour. We concur with the trial court that the nexus of the case revolves around the agreement, the denial of parol evidence and the lack of a business relationship with Hospital. All these issues had been briefed, discovered and exhausted in the first appeal involving Hospital and the subsequent motion for summary judgment filed by appellees. Upon review, we find no abuse of discretion by the trial court in denying the request for a stay for further discovery. Assignment of Error VII is denied.
The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby affirmed.
Hoffman, P.J. and Edwards, J. both concur in part and dissent in part.