[Cite as *Everett v. Parma Hts.*, 2013-Ohio-5314.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 99611

## RENEE EVERETT, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## CITY OF PARMA HEIGHTS, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-754706

**BEFORE:** E.A. Gallagher, J., Stewart, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 5, 2013

**ATTORNEYS FOR APPELLANTS**

Neal R. Nandi
Matthew F. Browarek
2000 Standard Building
1370 Ontario Street
Cleveland, OH    44113

**ATTORNEYS FOR APPELLEES**

Robert F. Cathcart
John T. McLandrich
Frank H. Scialdone
Mazanec, Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Cleveland, OH    44139

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Dale F. Pelsozy
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH    44113

Michael D. Pokorny
Director of Law
City of Parma Heights
6281 Pearl Road
Parma Heights, OH    44130

EILEEN A. GALLAGHER, J.:

{¶1}   Plaintiffs-appellants David and Renee Everett (the Everetts) appeal the judgment of the trial court granting summary judgment in favor of the city of Parma Heights ("City") and Cuyahoga County.   The Everetts argue that the trial court erred in determining that no genuine issue of material fact remained to be litigated for trial. Finding no merit to the instant appeal, we affirm the decision of the trial court.

{¶2}    The Everetts have resided at 10109 Eureka Parkway in the City since July 1, 1991.   Since that time, the Everetts allege that they had five incidents where their home flooded, filling their entire basement with between four to fourteen inches of raw-sewage material.   The first incident of flooding occurred in 1993, and they were flooded again in 1994, 1995, 2003 and 2007.   The Everetts informed the City after each flooding incident and, in 2008, they repaired their private sewer lateral and installed a backflow preventer.   The Everetts admit that they have not experienced a flooding of their basement since the repair and reconfiguration in 2008.

{¶3}   The City owns the sewers within its borders and maintains the storm sewers.   Cuyahoga County maintains the sanitary sewers within Parma Heights pursuant to a contract with the City entered into in 2001.   Cuyahoga County reported that they have monitored and maintained each sanitary sewer on a regular basis and have effectuated the necessary repairs, as needed, throughout the existence of their contract with Parma Heights.

**{¶4}** The Everetts filed the instant action against both the City and Cuyahoga County alleging negligence, trespass/nuisance, illegal taking, and breach of a third-party complaint. Both the City and the County filed motions for summary judgment claiming that they were entitled to governmental immunity and, more specifically, that the problems arising on the Everetts' property resulted from the improper construction of the lateral and the improper tie-in to the manhole in the street, none of which were the responsiblity of either the City or the County.

**{¶5}** The Everetts submitted the expert report of Peter Zwick, P.E. In his report, Zwick opined that the Everetts' sanitary sewer backups have been caused by the following: (1) inflow and infiltration during rain events causing a surcharge into the City's sanitary system, (2) improper configuration of the Everetts' lateral connection to a City sanitary manhole and (3) inadequate slope of the Everetts' sanitary lateral to the City sewer. The City and the County responded with expert testimony of their own arguing that neither agency was negligent.

**{¶6}** After reviewing the submitted evidence, the trial court found that there were no genuine issues as to any material fact, that reasonable minds could only find in favor of the City and the County and that the defendants were entitled to judgment as a matter of law.

**{¶7}** The Everetts appeal, raising the following assigned errors:

The trial court erred to the prejudice of Appellant-Plaintiff by granting Appellee-Defendant City of Parma Heights and Appellee-Defendant

County of Cuyahoga's motions for summary judgment based upon erroneous finding that plaintiffs have not presented any expert testimony to show with a reasonable degree of engineering probability that the flooding condition was caused by the negligence of the City of Parma Heights and/or Cuyahoga County and that negligence arose out of a proprietary function.

The trial court erred when it granted the City of Parma Heights and County of Cuyahoga's motion for summary judgment because the Plaintiff-Appellants properly brought an action for unlawful taking against the Defendant-Appellees in this matter, alleging that as a direct result of defendants' negligence, as well as defendants-appellees' failure to control and maintain the sewer systems, Plaintiff-Appellants' property has been flooded with waste water all resulting in a temporary and/or permanent taking by the Defendant-Appellees.

{¶8} Initially, we note that the Everetts limited their appeal to their claims of negligence and illegal taking. As such, our review of the evidence shall be limited to those two claims and we will not review their claims of trespass/nuisance and breach of third-party contract, which were raised only in the trial court.

{¶9} We review an appeal from summary judgment under a de novo standard. *Baiko v. Mays*, 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *N.E. Ohio Apt. Assn. v. Cuyahoga Cty Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

{¶10} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it

appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 1996-Ohio-326, 672 N.E.2d 654.

{¶11} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264. If the movant fails to meet this burden, summary judgment is not appropriate but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id.* at 293.

{¶12} As stated by the trial court in its opinion granting summary judgment, the legislature has generally shielded political subdivisions from tort liability. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 2000-Ohio-486, 733 N.E.2d 1141. Chapter 2744 of the Revised Code sets forth a three-tier analysis for determining whether a political subdivision is immune from liability. The first step sets forth the general rule that political subdivisions are entitled to broad immunity. R.C. 2744.02(A)(1) provides:

> Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

{¶13} Under the second tier of the statutory analysis, once immunity is

established, a determination must be made as to whether any of the five exceptions to immunity listed under R.C. 2744.02(B) apply.  If one or more exceptions apply, the third tier of analysis requires a determination of whether immunity may be reinstated because a defense applies.   Relevant here is the exception in R.C. 2744.02(B)(2), which declares that as a rule:

> [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

{¶14} Relevant to this case, R.C. 2744.01(C)(2)(l) identifies as a governmental function "the provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including but not limited to, a sewer system," making these responsibilities immune from political-subdivision liability.   By contrast, R.C. 2744.02(G)(2)(g) identifies "the maintenance, destruction, operation, and upkeep of a sewer system" as a proprietary function for which civil liability may attach.

{¶15}   In this case, the Everetts assert a claim against the City and the County for negligent maintenance of the sewer system.   However, before R.C. 2744.02(B)(2) will remove the City or the County's immunity, the Everetts must first establish the elements required to sustain a negligence action and second, that the negligence arose out of "a proprietary function."   *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493.   "In order to establish negligence, one must show the existence of a duty, a breach of that duty, and that the breach was the proximate cause of an injury."

*Nelson* at ¶ 22.

{¶16} As stated above, the Everetts' expert opined that their sanitary sewer backups were caused by (1) inadequate slope of the Everetts' sanitary lateral to the City sewer, (2) improper configuration of the Everetts' lateral connection to a City sanitary manhole and (3) inflow and infiltration during rain events causing surcharging in the City's sanitary system. In particular, Zwick noted that the Everetts' lateral, which is the pipe traveling from their basement to the City-owned sanitary sewer had an inadequate slope. Further, the lateral itself is connected approximately one foot too low on the City's sanitary manhole. Because of this, the City's sanitary sewer pipe need not even be full before sewage begins to fill the Everetts' lateral. Zwick noted that both of these problems are construction issues and that he was unaware who installed and connected the lateral to the City's manhole. It is clear from the testimony of the Everetts' expert that even if this lateral were not on private property, this is a construction issue that would qualify as a "government function," pursuant to R.C. 2744.01(C)(2)(l) and the City and County are immune from liability.

{¶17} With regard to the inflow and infiltration problem, Zwick testified that the "sewer authority" should have passed an ordinance to "eliminate illegal connections" into the sanitary system. Zwick acknowledged that this would involve legal or legislative action and would result in work performed on private residents' property. Zwick also testified that the City and/or the County should have built a relief sewer or "surge tank"

to handle the surcharging resulting from inflow and infiltration and replaced substandard pipes. Zwick admitted that both of these options required completely new construction of sewers. Zwick's first proposal is a governmental function as defined by R.C. 2744.01(C)(2)(f). Further, his remaining two proposals would require construction of new sewers, which also fall under the "governmental function" definition of "planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system."

{¶18} The City offered the opinions of Christopher Courtney, P.E., who acknowledged that, although there is an inflow and infiltration problem in the area of the Everetts' home, studies show that 70 to 80% of inflow and infiltration to sanitary sewers were coming from private property. Courtney reported that the City and the County have adequately maintained and operated the sewers, which function "in all but the most severe rainfall conditions." Finally, Courtney opined that the "substandard" connection of the Everetts' lateral to the City manhole was not the fault of the City or the County:

> At the time of home construction, the builder laid the connection in a manner that created the flat/backwards sloped connection that reaches the main line below the flow line of the sewer. When building the home, the builder should have either raised the basement floor elevation, or serviced the basement with a sanitary sump pump.

{¶19} The County offered an affidavit from their expert, Charles Althoff, who related that in 2007 the County televised and inspected the sanitary sewers proximate to the Everetts' property. The County's inspection revealed that the storm and sanitary

sewer lines located within the City were clear and free from obstruction and in good repair. The County also tested the Everetts' sewer lateral and discovered that the Everetts' sanitary sewer lateral was pitched back towards the home and had a "sag in the line" where water was "ponding" instead of flowing freely through the line. Althoff noted that the pitch of the lateral towards the Everetts' home caused a decrease in the flow of water from the house, which allowed materials entering the sanitary lateral from the home to become stuck within the pipe causing blockages and flow problems. The County's report also revealed that the Everetts had an illegal connection from one of their downspouts on their home into the sanitary sewer lateral.

{¶20} The Everetts also support their argument by citing a letter from City Engineer Daniel Neff. In the letter dated from 1995, Neff recommends to the city's mayor that 270 feet of sanitary sewer under Eureka Parkway be replaced due to cracks and structural failure. The Everetts used this letter to stand for the proposition that the City was aware since 1995 that the sewer system servicing their home was flawed and that these flaws caused the Everetts' flooding in their basement. Although the City and the County admit that the line has not been replaced, they state that "there is a regular system of inspection and maintenance of sanitary sewers in Parma Heights" and the "sanitary sewers in the Eureka Parkway area have been inspected every two to three years and have been in good repair and clear of any debris or obstructions." Affidavit of Charles Althoff, Cuyahoga County Sanitary Engineer.

**{¶21}** As the trial court noted, the Everetts have not produced any evidence of the present-day condition of the Eureka Parkway sewer line and, further, they have not had any problems since they installed a backflow preventer and replaced their sanitary lateral in 2008.

**{¶22}** Although the Everetts allege that their negligence claim falls within the "proprietary function" exception to immunity under R.C. 2744.02(B)(2), they have failed to meet their burden of establishing the elements required to sustain a negligence action and that the negligence arose out of a proprietary function. Further, all potential causes and repair for the sanitary backups listed by their expert fall under the governmental function definition of political subdivision immunity. R.C. 2744.01(C)(2)(1).

**{¶23}** Because the Everetts did not present any expert testimony to show within a reasonable degree of engineering probability that the flooding condition was caused by the negligence of the City and/or Cuyahoga County and that negligence arose out of a proprietary function, their negligence claim fails as a matter of law.

**{¶24}** The Everetts' first assignment of error is overruled.

**{¶25}** In their second and final assigned error, the Everetts argue that the trial court erred in granting summary judgment in favor of the City and the County on their claim of illegal taking. We disagree.

**{¶26}** The Everetts' claims against the City in mandamus requesting that the court compel the City to initiate appropriation proceedings with respect to their home

also fails. In this claim, the Everetts argue that the City has "taken" their property because of the sewer flooding issues. However, as noted by the trial court, in Ohio, an application for the writ of mandamus must be by petition, in the name of the State on the relation of the person applying, and verified by affidavit. R.C. 2731.04. The Ohio Supreme Court "has dismissed petitions for writs of mandamus when, inter alia, the action was not brought in the name of the state on the relation of the person requesting the writ." *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 574, 2004-Ohio-5596, 817 N.E.2d 382.

{¶27} The Everetts failed to comply with R.C. 2731.04 in bringing their mandamus action against the City and thus, their claim fails as a matter of law.

{¶28} The Everetts' second assignment of error is overruled.

{¶29} The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, J., CONCURS;
MELODY J. STEWART, A.J., CONCURS
IN JUDGMENT ONLY