[Cite as *Garmback v. Cleveland*, 2022-Ohio-1490.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

LINDA GARMBACK,                          :

    Plaintiff-Appellee,          :

                                   No. 110295

    v.                                :

CITY OF CLEVELAND, ET AL.,               :

    Defendants-Appellants.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** May 5, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-902195

---

### *Appearances:*

O'Toole, McLaughlin, Dooley & Pecora Co., LPA, Anthony
R. Pecora, Patrick M. Ward, and Steven Bosak, *for
appellee.*

Mark Griffin, Cleveland Director of Law, and Craig J.
Morice, Assistant Director of Law, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant city of Cleveland (the "City") appeals the denial

of its motion for summary judgment. For the reasons that follow, we reverse in part,

affirm in part, and remand for further proceedings.

## Factual and Procedural History

{¶ 2} Clifford Paul Gilmore Jr. ("Gilmore") was killed in a car accident on April 5, 2007. Linda Garmback ("Garmback"), his sister, made the arrangements for his burial with Ripepi and Sons Funeral Home ("Ripepi"). Ripepi handled the details as requested by the family, including making arrangements for Gilmore to be buried at West Park Cemetery ("West Park"), a cemetery owned and operated by the City. Garmback's parents and daughter are buried at West Park. Garmback visited the graves of her family members regularly, usually on holidays and birthdays.

{¶ 3} Shortly after Gilmore's death, Garmback purchased a burial plot for herself next to Gilmore. In 2008, the family purchased a headstone for Gilmore's grave. Garmback visited her brother's grave weekly the first year, then less often over time.

{¶ 4} Years later on May 13, 2018, Mother's Day, Garmback went to the cemetery to visit her deceased family members. When she arrived at her brother's grave, she noticed that there was a headstone for "Francisca Garcia" on the plot next to her brother's. Garmback believed the headstone was on the plot she had purchased for herself. On May 16, 2018, she went to West Park and spoke with Mike Strauss ("Strauss"), the cemetery manager, about the headstone.

{¶ 5} That same day, Strauss investigated and determined that Gilmore's headstone was in the wrong location. Gilmore's headstone had been placed on a grave in section 31, lot 347. Strauss learned that Gilmore was actually buried in an

adjacent lot, section 31, lot 346, gravesite 2. Strauss determined that Gilmore's headstone had been placed in lot 347 by mistake. Strauss immediately moved Gilmore's headstone to the correct grave.

{¶ 6} Garmback was devastated on learning that she had been visiting the wrong grave for 11 years. Further, the mistake made her question whether her brother's remains were located where the City claimed they were. In her deposition, Garmback testified that she suffered from emotional distress as a result of this situation. She described crying over almost anything. She became depressed causing her to become overly emotional and causing her to sleep up to 16 hours a day. Finally, she described disinterest in doing her typical daily activities.

{¶ 7} On August 15, 2018, Garmback filed suit against the City alleging negligence, negligent or reckless infliction of emotional distress, breach of contract, and respondeat superior. On February 18, 2019, Garmback filed an amended complaint, adding Milano Monuments, LLC ("Milano") as a defendant, alleging injury due to Milano's negligence, negligent or reckless infliction of emotional distress, and respondeat superior. During discovery, Garmback learned that an employee from Milano was responsible for placing Gilmore's headstone on the incorrect grave.

{¶ 8} On January 15, 2020, the City filed a motion for summary judgment arguing that they were entitled to political subdivision immunity under R.C. 2744.02.

**{¶ 9}** Garmback opposed the motion, arguing that the City was not entitled to immunity and that she had sufficiently set forth facts to support her causes of action.

**{¶ 10}** On January 14, 2021, the trial court summarily denied the City's motion. The City appeals and assigns the following sole error for our review:

### Assignment of Error

The trial court erred as a matter of law in failing to grant summary judgment in favor of the City of Cleveland on the ground of Political Subdivision Immunity as set forth in R.C. 2744.01, et., seq.

## Jurisdiction

**{¶ 11}** As an initial matter, we must address jurisdiction. Typically, an order denying a motion for summary judgment is not a final, appealable order. *Ceasor v. E. Cleveland*, 2018-Ohio-2741, 112 N.E.3d 496, ¶ 13 (8th Dist.), citing *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9, citing *State ex rel. Overmeyer v. Walinski*, 8 Ohio St.2d 23, 24, 222 N.E.2d 312 (1966). However, R.C. 2744.02(C) provides:

An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order.

**{¶ 12}** While we are authorized to review the trial court's decision, the scope of that review is limited. *Id.* at ¶ 14. We may only examine "alleged errors in the portion of the trial court's decision that denied the benefit of immunity." *Id.*, citing *Reinhold v. Univ. Hts.*, 8th Dist. Cuyahoga No. 100270, 2014-Ohio-1837, ¶ 21, citing

*Riscatti v. Prime Properties Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 20.

{¶ 13} Preliminarily, we must look at Garmback's breach-of-contract claim as it relates to political subdivision immunity. The benefit of immunity is unavailable to political subdivisions in contract claims. Pursuant to R.C. 2744.09(A), political subdivision immunity does not apply to "[c]ivil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability." "'R.C. 2744.09(A) has been consistently interpreted to mean that political subdivisions cannot claim governmental immunity for breach of contract claims.'" *Smith v. Euclid*, 8th Dist. Cuyahoga No. 107771, 2019-Ohio-3099, ¶ 14, quoting *Today & Tomorrow Heating & Cooling v. Greenfield,* 4th Dist. Highland No. 13CA14, 2014-Ohio-239, ¶ 14.

{¶ 14} Review of the trial court's denial of the City's motion for summary judgment on the breach-of-contract claim is outside the scope of our jurisdiction. Therefore, the denial of the summary judgment as it relates to the contract claim remains.

{¶ 15} Consequently, we will confine our review to the remaining causes of action.

**Standard of Review**

{¶ 16} Our review of summary judgment is de novo. *Johnson v. Cleveland City School Dist.*, 8th Dist. Cuyahoga No. 94214, 2011-Ohio-2778, ¶ 33. In a de novo review, "we afford no deference to the trial court's decision and independently

review the record to determine whether [the denial of] summary judgment is appropriate." *Id.* at ¶ 53, citing *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.).

{¶ 17} Summary judgment is appropriate when "(1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion which is adverse to the nonmoving party." *Ceasor,* 2018-Ohio-2741, 112 N.E.3d 496 at ¶ 15, citing *Hull v. Sawchyn*, 145 Ohio App.3d 193, 196, 762 N.E.2d 416 (8th Dist.2001).

{¶ 18} "The burden of showing that no genuine issue of material fact exists falls on the party who moves for summary judgment." *Sickles v. Jackson Cty. Hwy. Dept.,* 196 Ohio App.3d 703, 2011-Ohio-6102, 965 N.E.2d 330, ¶ 12 (4th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). To meet this burden, the moving party must reference "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that demonstrate the nonmoving party has no evidence to support their claims. *Id.*, citing Civ.R. 56(C). Once the moving party has met their burden, the nonmoving party must respond with affidavits and/or set forth specific facts as provided in Civ.R. 56 showing there are genuine issues for trial. *Id.*, citing Civ.R. 56(E).

**Political Subdivision Immunity**

{¶ 19} "'There is a three-tiered analysis to determine whether a political subdivision is immune from liability under R.C. 2744.02.'" *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 8, quoting *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998).

{¶ 20} R.C. 2744.02(A)(1) divides the functions of a political subdivision into two types, governmental functions and proprietary functions. Under the first tier, if a defendant is determined to be a political subdivision, it is immune from liability for its governmental and proprietary functions "in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision * * *." R.C. 2744.02(A)(1).

{¶ 21} Under the second tier, the immunity conferred under R.C. 2744.02(A)(1) "'is not absolute, but is * * * subject to the five exceptions to immunity listed in * * * R.C. 2744.02(B).'" *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 12, quoting *Cater* at 28.

{¶ 22} The third tier of political subdivision immunity analysis comes into operation if it is determined that one of the exceptions to immunity under R.C. 2744.02(B)(1) through (5) applies. Under the third-tier, immunity can be reinstated if the political subdivision can demonstrate that one of the defenses under R.C. 2744.03 applies. *Id.*

{¶ 23} Here, under the first tier of the analysis, the City qualifies as a political subdivision. R.C. 2744.01(F) ("political subdivision" * * * means a "municipal corporation * * *"). The next question is whether the City was engaged in a governmental or proprietary function during the incident that caused the claimed loss. R.C. 2744.01(G)(2)(b) defines "the design construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery" as a proprietary function. As a political subdivision engaged in a propriety function, the City is entitled to immunity under R.C. 2744.02(A)(1) unless one of the exceptions in R.C. 2744.02(B) applies.

{¶ 24} Under the second tier, we examine exceptions to immunity. For proprietary functions, R.C. 2744.02(B)(2) states that a political subdivision is subject to liability when "injury, death or loss, to person or property, is caused by the negligent performance of acts by political subdivision employees." R.C. 2744.02(B)(2).

{¶ 25} For ease of analysis, we will examine Garmback's negligence, negligent infliction of emotional distress, and respondeat superior claims first. Then we will address the claim for reckless infliction of emotional distress as it requires a different analysis.

**The Exception to Political Subdivision Immunity under R.C. 2744.02(B)(2)**

**Negligence**

{¶ 26} In order to demonstrate that R.C. 2744.02(B)(2) applies to remove immunity from the City, the "appellant must establish * * * the elements required to sustain a negligence action." *Riveredge Dentistry Partnership v. Cleveland*, 8th Dist. Cuyahoga No. 110275, 2021-Ohio-3817, ¶ 32, citing *William v. Glouster*, 2012-Ohio-1283, 864 N.E.2d 102, ¶ 17 (4th Dist.), citing *Gabel v. Miami E. School Bd.*, 169 Ohio App.3d 609, 2006-Ohio-5963, 864 N.E.2d 102, ¶ 39-40 (2d Dist.).

{¶ 27} To establish negligence, Garmback must show "'the existence of a duty, a breach of that duty, and that the breach was the proximate cause of an injury.'" *Everett v. Parma Hts.*, 8th Dist. Cuyahoga No. 99611, 2013-Ohio-5314, ¶ 15, quoting *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, at ¶ 22.

{¶ 28} In the instant case, it is undisputed that Gilmore's headstone was placed on the wrong grave. The City argues that they had no duty to properly place the headstone. Absent a duty of care, negligence cannot occur. We agree.

{¶ 29} A review of the case law establishes that there is no "cognizable duty to provide a proper and dignified burial aside from appropriate contractual obligations." *Frys v. Cleveland*, 107 Ohio App.3d 281, 284, 286, 668 N.E.2d 929 (8th Dist.1995), *see also Dunker v. Babitt Funeral Home*, 8th Dist. Cuyahoga No. 69727, 1996 Ohio App. LEXIS 1692 (Apr. 25, 1996).

{¶ 30} *Dunker* is similar to the case at hand. When Dunker's mother died in 1980, a dual headstone was placed on her grave to cover the adjacent plot that had been purchased for Dunker's father. After the father died in 1993, it was learned that the headstone had been improperly placed at the foot of the grave. Further, half of the headstone was on the wrong plot. Dunker sued North Royalton and North Royalton Cemetery for negligence and negligent, reckless and/or intentional infliction of emotional distress, among other claims. North Royalton filed a motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim upon which relief could be granted. The trial court granted the city's motion to dismiss, and Dunker appealed.

{¶ 31} The court of appeals found that the dismissal of the negligence claim was proper. Where the plaintiff did not allege mishandling of the remains or desecration of the grave, the court found that there was no cause of action for wrongful burial. The court found the dismissal proper "whether we view appellant's negligence claim as relating to the misplacement of the headstone or the burial site." *Id*. at 6.

{¶ 32} The *Frys* Court made a similar finding when reviewing the misplacement of a burial site. We found that the trial court erred when it denied Cleveland's motion for a directed verdict because Ohio does not recognize a cause of action for wrongful burial. Nor is there a duty to provide a proper and dignified burial. *Frys,* 107 Ohio App.3d at 284, 668 N.E.2d 929.

{¶ 33} Courts are mindful of the emotional toll mistakes create during the burial of a loved one, as such, "Ohio law has long recognized 'a cause of action for abuse of a dead body' which would include mishandling of a dead body and desecration of a grave." *Dunker*, 8th Dist. Cuyahoga No. 69727 at ¶ 5, quoting *Frys* at 284. However, absent evidence of that type of egregious, outrageous conduct, courts have been reluctant to find negligence or tortious infliction of emotional distress. *Carsey v. Alexander Cemetery, Inc.*, 4th Dist. Athens No. 00CA028, 2001-Ohio-2438 (burial of decedent in graves outside of family plot did not rise to level of actionable negligence). *See also Davis v. Billow Co. Falls Chapel*, 81 Ohio App.3d 203, 610 N.E.2d 1024 (9th Dist.1991) (funeral home's conduct was not negligent as a matter of law when it, without notice to the family, did not place an unembalmed body in the casket during a closed casket funeral)*; compare Carney v. Knollwood Cemetery Assn.*, 33 Ohio App.3d 31, 32, 514 N.E.2d 430 (8th Dist.1986) (claims for negligent and intentional infliction of emotional distress allowed where cemetery manager ordered workers to dispose of plaintiff's loved one's remains on a refuse heap).

{¶ 34} The facts in this case simply are not of the type that would permit a finding of negligence. Garmback has not alleged that the City mishandled Gilmore's remains or that it desecrated his grave. Garmback argues and the City agrees, that the City misplaced Gilmore's headstone, which is not actionable negligence, as a matter of law. *Dunker*.

{¶ 35} In conclusion, the City has established that under the facts of this case, it was not negligent as a matter of law. As Garmback has failed to point to evidence in the record that establishes a genuine issue of material fact that would allow her to recover under a theory of negligence, the City was entitled to immunity under R.C. 2744.02(A).

{¶ 36} Accordingly, the trial court erred in denying the City's motion for summary judgment as to the negligence claim.

**Negligent Infliction of Emotional Distress**

{¶ 37} As we have already discussed briefly, while there is no cause of action for wrongful burial in Ohio, the state does recognize a cause of action for abuse of a dead body, which would include mishandling a dead body and desecration. *Frys*, 107 Ohio App.3d at 284, 668 N.E.2d 929. "Mental anguish resulting from the mishandling of dead bodies has long been acknowledged." *Knollwood Cemetery Assn.*, 33 Ohio App.3d 31, 514 N.E.2d 430 paragraph one of the syllabus.

{¶ 38} On the other hand, where the evidence does not show that there was outrageous or egregious mistreatment of remains or desecration, courts have refused to find negligent infliction of emotional distress.

{¶ 39} In the instant case, looking at the evidence in a light most favorable to Garmback, there is no evidence that Gilmore's remains were desecrated or misplaced. The type of outrageous and egregious conduct that lends support to a claim of negligent infliction of emotional distress simply did not happen here.

{¶ 40} Since the City's conduct was not of the outrageous and/or egregious nature necessary for a claim of negligent infliction of emotional distress, there is no need to examine the harm Garmback allegedly experienced. Accordingly, the trial court erred in denying the City's motion for summary judgment as to the negligent infliction of emotional distress claim.

## Respondeat Superior

{¶ 41} "'A political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C. 2744.02(B) applies.'" *McKee v. McCann*, 2017-Ohio-7181, 95 N.E.3d 1079, ¶ 48 (8th Dist.), quoting *Reno v. Centerville*, 2d Dist. Montgomery No. 20078, 2004-Ohio-781, ¶ 53, citing *Lee v. Cleveland*, 151 Ohio App.3d 581, 2003-Ohio-742, 784 N.E.2d 1218 (8th Dist.). As we have established that none of the exceptions in R.C. 2744.02(B) apply to Garmback's negligence claims, her respondeat superior claim must fail.

{¶ 42} Accordingly, the trial court erred in denying the City summary judgment as to the claim of respondeat superior.

## Reckless (Intentional) Infliction of Emotional Distress

{¶ 43} We now turn to the intentional tort of reckless infliction of emotional distress. Intentional infliction of emotional distress is defined as "'one who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another.'" *Seminatore v. Redmond*, 8th Dist. Cuyahoga No. 54806, 1988 Ohio App. LEXIS 5002, 11 (Dec. 15, 1988), quoting *Yeager v. Local*

*Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), syllabus. "Under Ohio law, reckless infliction of emotional distress and intentional infliction of emotional distress are the same cause of action." *Hunt v. Toledo Law Dept.*, 881 F.Supp.2d 854, 886 (N.D.Ohio 2012), citing *Ward v. Cty. of Cuyahoga*, 721 F.Supp.2d 677, 695 (N.D.Ohio 2010), fn. 8; N.D.Ohio No. 1:03 CV 2075, 2006 U.S. Dist. LEXIS 11913 (Mar. 21, 2006), citing *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 570 N.E.2d 1076 (1991).

{¶ 44} There is no evidence in this record that the City's employees intentionally or recklessly misplaced Gilmore's headstone. Regardless, "[i]t is * * * well established that political subdivisions are immune from intentional torts under R.C. 2744.02." *CR Hill, LLC v. Westlake*, 8th Dist. Cuyahoga No. 110610, 2022-Ohio-693, ¶ 21, citing *Fried v. Friends of Breakthrough Schools*, 8th Dist. Cuyahoga No. 108766, 2020-Ohio-4215, ¶ 24, citing *Walsh v. Mayfield*, 8th Dist. Cuyahoga No. 92309, 2009-Ohio-2377, ¶ 11, citing *Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450, 639 N.E.2d 105 (1994).

{¶ 45} Accordingly, the trial court erred when it denied summary judgment to the City on the reckless infliction of emotional distress claim.

{¶ 46} Finally, as the exception under R.C. 2744.02(B)(2) does not apply to remove immunity from the City, there is no need to proceed to the third tier of immunity analysis.

{¶ 47} For the foregoing reasons, we reverse the trial court's ruling denying summary judgment as to the negligent, negligent and reckless infliction of emotional distress, and respondeat superior claims, affirm the trial court's ruling with respect

to the breach-of- contract claim and remand to the trial court for further proceedings on that claim.

{¶ 48} Judgment affirmed in part, reversed in part, and remanded.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR