[Cite as *DeBarr v. Cleveland*, 2023-Ohio-4121.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

ED DEBARR,                                    :

    Plaintiff-Appellee,           :

    v.                            :        No. 112305

CITY OF CLEVELAND,                           :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** November 16, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-951047

---

### *Appearances:*

Lewis Brisbois Bisgaard & Smith, LLP, David A. Campbell,
Donald G. Slezak, and Y. Timothy Chai, *for appellee*.

Mark D. Griffin, Cleveland Director of Law, and Jerome A.
Payne, Jr., Assistant Director of Law, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant city of Cleveland (the "City") appeals the decision of the trial court which denied its motion for summary judgment based on political subdivision immunity. For the foregoing reasons, we reverse the decision of the trial court.

**Procedural History and Factual Background**

{¶ 2}  On November 1, 2019, Ed DeBarr ("DeBarr") moved into a home he and his wife purchased in Bay Village, Ohio.  On November 2, 2019, a water main located south of the home broke.  The water main is owned by the city of Bay Village ("Bay Village") but maintained by the City.  According to a police report attached to DeBarr's opposition to summary judgment, the Bay Village Police Department ("BVPD") became aware of the water main break at approximately 3:38 a.m.  The police report recorded that the city of Cleveland's water department ("CWD") was notified of the break at approximately 3:53 a.m.  The police officer's report noted that by 5:10 a.m., the break was getting worse; at 5:29 a.m., the officer attempted to make contact with Debarr; and at 5:38 a.m., the officer spoke to DeBarr.  The final note in the report at 6:26 a.m., described the water from the break "directly" hitting DeBarr's home.  "BVSD"[1] was called out to assist; however, that call was canceled because CWD advised that they were ten minutes away.

{¶ 3}  Noting he was unsure of the time, DeBarr testified in his deposition that the police knocked on his door between 2:30 and 3:30 a.m.  His affidavit attached to his opposition motion placed the time closer to 5:30 a.m.  At that time, there was a "substantial" amount of water on Lake Road in front of his house, flowing towards his garage.  The water main is located on Lake Road, which is at a higher elevation than DeBarr's home.  Water from Lake Road would flow downhill

---

[1] BVSD was not defined in the report.

towards the home and possibly into Lake Erie behind the house. A police officer noticed that nearby sewer drains were clogged. DeBarr and two police officers worked to unclog the sewer drains to encourage the water to flow into the drains and away from DeBarr's property. DeBarr estimated they cleared six to seven sewer drains, and the water began to drain through the sewers. Even so, DeBarr noted that the water was up to about six inches in front of the house. He also noted that it lowered sometime after the City's employees arrived.

{¶ 4} Joseph Miranda ("Miranda") was working as a dispatcher for the CWD on Saturday, November 2, 2019. Although the City employed a second dispatcher, Miranda typically worked alone on Saturdays. Miranda received a call around 5:10 a.m., on November 2, 2019, regarding the water main break in front of DeBarr's home. Miranda did not remember and the City did not have a record of a call earlier in the morning. At 5:12 a.m., Miranda created a work order for the water main break. Kyle Gembus ("Gembus"), a water repair unit leader for the City, was assigned the Lake Road water main break at approximately 5:52 a.m. At the time, Gembus' shift was from midnight until 8:30 a.m., Tuesday through Saturday. Per Miranda, if a call came in and investigators or repair crews were at other sites, the crew would be assigned once they became available. Additionally, CWD crews would respond to issues throughout the county, so travel time was an additional factor that determined when crews would arrive at an incident.

{¶ 5} Gembus and his crew arrived at the site at approximately 6:26 a.m. On arrival, Gembus observed water coming up between the sidewalk and the street

along the front of the house. Further, Gembus observed the water was moving towards the front of the house because the land sloped downward from the street. He also observed water built up at the front of the house, a couple of inches deep, and water moving along the side and toward the back of the house.

{¶ 6} Gembus described the flow of water as similar to if you turned on your garden hose and let the water run. He would expect to see the water built up as it was where the sewer was unable to collect all the water. After his initial assessment of the situation, Gembus decided to locate the shut-off valves and limit the amount of water coming out. To that end, Gembus located two valves, shut off one valve and turned the other one down to limit the flow of water. Gembus indicated that they needed the water to stay on to locate the site of the leak. Also, given the time of day, he did not want to turn off the water completely in case people needed to get ready for work.

{¶ 7} Gembus and his crew then attempted to locate the leak by pushing metal test rods into the ground. While doing this, someone inadvertently hit a gas line causing a leak. CWD had diagrams showing where the water mains were, but those maps did not show the location of gas lines. For safety reasons, CWD stopped working until the Ohio Utility Protective Service ("OUPS") could come out and repair the leak. In the interim, CWD tried to pump some of the water into the street. Gembus did not recall if he did this at DeBarr's request; however, he noted that CWD was not required to divert water away from the property. They carried a pump with them to remove water from sites they excavated but not to divert water from private

property. Although Gembus tried to use the pump, it did not work effectively. Gembus and his crew stayed at the scene until the end of their shift, i.e., 8:30 a.m., when a relief crew arrived. Gembus did not return to the site after that and did not know when the water main break was fixed.

{¶ 8} Around 10:00 a.m., DeBarr was contacted by a neighbor who alleged someone was pumping water over the cliff in DeBarr's backyard, damaging the property. When DeBarr went to look, he observed a pump; however, it was not in use and the hose was not attached. DeBarr never saw who placed or removed the pump and did not know who it belonged to, though he suspected it belonged to the City. DeBarr also noticed that a water tube that fed water from the street-level sewers into the lake had been displaced from its position. It was completely separated from the system and lying on some rocks closer to the lake.

{¶ 9} On August 6, 2021, DeBarr filed suit against the City. DeBarr alleged that the City's immunity established under R.C. Chapter 2744 did not apply because the City's actions were negligent under R.C. 2744.02(B)(2) and immunity was not restored under R.C. 2744.03(A)(5), (Count 1); and the City acted with reckless and wanton negligence (Count 2). DeBarr did not sue any of the City's employees individually, nor did he sue Bay Village. The City filed its answer on September 9, 2021, asserting several claims and defenses, including statutory immunity pursuant to R.C. Chapter 2744.

{¶ 10} On September 19, 2022, the City filed a motion for summary judgment arguing that it was entitled to political subdivision immunity under

R.C. Chapter 2744. The City alleged that DeBarr had not established that the City acted negligently in its repair of the water main break and that the City could not be found liable for water that flowed over the property.

{¶ 11} DeBarr filed a motion in opposition to summary judgment on October 17, 2022. In the motion, DeBarr argued that the City's actions were negligent and that it was not entitled to immunity under R.C. 2744.02. Further, DeBarr argued that immunity was not restored under R.C. 2744.03.

{¶ 12} On December 19, 2022, the trial court denied the City's motion for summary judgment. The court found that there remained genuine issues of material fact and that the City was not entitled to judgment as a matter of law.

{¶ 13} The City now appeals and raises the following errors for our review:

### Assignment of Error No. 1

It was reversible error for the lower court to hold that there were material issues of fact when it denied the City of Cleveland's motion for summary judgment based on statutory immunity.

### Assignment of Error No. 2

It was reversible error for the lower court when it failed to reinstate immunity as a matter of law.

## Law and Analysis

{¶ 14} Preliminarily, we examine our jurisdiction to hear this case. Ordinarily, the denial of a motion for summary judgment would not be a final appealable order, which would divest this court of jurisdiction. However, when a trial court denies a political subdivision the benefit of political subdivision immunity

under R.C. Chapter 2744, that denial is a final appealable order. *Garmback v. Cleveland*, 8th Dist. Cuyahoga No. 110295, 2022-Ohio-1490, ¶ 11; citing *State ex rel. Overmeyer v. Walinski*, 8 Ohio St.2d 23, 24, 222 N.E.2d 312 (1966); R.C. 2744.02(C). Accordingly, we review the trial court's decision to determine whether it erred when it denied the City political subdivision immunity.

## Standard of Review

{¶ 15} A trial court's decision on a motion for summary judgment is subjected to de novo review. *Garmback* at ¶ 16; citing *Johnson v. Cleveland City School Dist.*, 8th Dist. Cuyahoga No. 94214, 2011-Ohio-2778, ¶ 33. In a de novo review, "we afford no deference to the trial court's decision and independently review the record to determine whether [the denial of] summary judgment is appropriate." *Id.*, quoting *Johnson* at ¶ 53, citing *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.).

{¶ 16} A court grants summary judgment when "(1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion, which is adverse to the nonmoving party." *Ceasor v. E. Cleveland*, 2018-Ohio-2741, 112 N.E.3d 496, ¶ 15 (8th Dist.), citing *Hull v. Sawchyn*, 145 Ohio App.3d 193, 196, 762 N.E.2d 416 (8th Dist.2001).

{¶ 17} The party requesting summary judgment has the burden of showing that no genuine issue of material fact exists. *Sickles v. Jackson Cty. Hwy. Dept.*, 196

Ohio App.3d 703, 2011-Ohio-6102, 965 N.E.2d 330, ¶ 12 (4th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). A party meets this burden by citing "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that demonstrate the nonmoving party has no evidence to support their claims. *Id.*, citing Civ.R. 56(C). Once the moving party has met its burden, the nonmoving party must respond with affidavits and/or set forth specific facts as provided in Civ.R. 56 showing there are genuine issues of material fact. *Id.*, citing Civ.R. 56(E).

{¶ 18} The affidavits submitted in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E). In addition, all papers or parts of papers referred to in the affidavit and attached as an exhibit should be sworn or certified. *Id.*

{¶ 19} "[A] mere assertion of personal knowledge satisfies the personal knowledge requirement of Civ.R. 56(E) if the nature of the facts in the affidavit combined with the identity of the affiant creates a reasonable inference that the affiant has personal knowledge of the facts in the affidavit." *Bank One, N.A. v. Lytle*, 9th Dist. Lorain No. 04CA008463, 2004-Ohio-6547, ¶ 13.

**Political Subdivision Immunity**

{¶ 20} Based on the foregoing, we must examine the record to see whether the City's motion for summary judgment established that it was entitled to political subdivision immunity, as a matter of law, i.e., that there were no genuine issues of material fact that would prevent the City from receiving immunity.

{¶ 21} In order to determine whether a political subdivision is entitled to immunity under R.C. Chapter 2744, a three-tiered analysis is used. *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1998). A political subdivision is not liable for "damages in a civil action for injury, death or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or propriety function"; except as provided in R.C. 2744.02(B). *Id.*; R.C. 2744.02(A)(1).

{¶ 22} Under the first tier, a court acknowledges "the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7.

{¶ 23} The second tier has the court establish whether one of the five exceptions to immunity listed in R.C. 2744.02(B) applies, exposing the political subdivision to liability. *Id.* at ¶ 8.

{¶ 24} Finally, in the third tier, if one of the exceptions is found to apply and no defense in that section protects the political subdivision from immunity, the court must then determine whether any of the defenses to liability delineated in

R.C. 2744.03 apply thereby reinstating immunity and providing a defense against liability. *Id.* at ¶ 9.

{¶ 25} In the first assignment of error, the City alleges that the trial court erred when it found genuine issues of material fact remained because DeBarr presented no evidence that the City was negligent.

{¶ 26} In the instant case, the parties agree that the City is a political subdivision entitled to blanket immunity under R.C. 2744.02. Additionally, they agree that the City's maintenance of the water mains in Bay Village is a proprietary function. *See* R.C. 2744.01(G)(2)(c), a proprietary function includes "the establishment, maintenance, and operation of a utility, including, but not limited to * * * a municipal corporation water supply system."

{¶ 27} The parties disagree about whether DeBarr established that the City's conduct was negligent. Under the second tier of the immunity analysis, a political subdivision is "liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). In its motion for summary judgment, the City alleged that DeBarr failed to establish that it acted negligently in repairing the water main break. DeBarr in his responsive motion did not address whether the facts established the City's negligence. Rather, DeBarr suggested that tiers one and two were met and moved to the third tier to establish that immunity was not reinstated under R.C. 2744.03. In response, the City argued that there was no need to consider whether immunity was restored because DeBarr

failed to establish actionable negligence. However, the City alleged, if the court found negligence, a review of all of the deposition testimony, including DeBarr's, established that the CWD workers did not act recklessly nor wantonly.

{¶ 28} In order to remove the City's immunity under R.C. 2744.02(B)(2), DeBarr needed to establish the City was negligent in its handling of the water main repair by showing "the existence of a duty, a breach of that duty, and that the breach was the proximate cause of an injury." *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493, ¶ 22. Negligence is not presumed simply from proof of an injury caused by some act of the defendant. "The burden is on the plaintiff to prove by a preponderance of the evidence that the defendant failed to exercise the care that a reasonably prudent person is accustomed to exercise under the same or similar circumstances." *Riveredge Dentistry Partnership v. Cleveland*, 8th Dist. Cuyahoga No. 110275, 2021-Ohio-3817, ¶ 24, citing *Republic Light & Furniture Co. v. Cincinnati*, 97 Ohio App. 532, 536-537, 127 N.E.2d 767 (1st Dist.1954). If the standard of care is not common knowledge to the jury, the plaintiff must also introduce "evidence from which the jury may reasonably infer the appropriate standard of care in the situation." *Leslie v. Cleveland*, 2015-Ohio-1833, 37 N.E.3d 745, ¶ 16 (8th Dist.), citing *Republic Light* at 532-533.

{¶ 29} In the absence of duty, liability cannot exist. *Stein v. Honeybaked Ham Co.*, 9th Dist. Summit No. 22904, 2006-Ohio-1490, ¶ 10; *Feichtner v. Cleveland*, 95 Ohio App.3d 388, 394, 642 N.E.2d 657 (8th Dist.1994). Duty depends on "(1) the relationship between the parties, and (2) the foreseeability of injury." *E.*

*Ohio Gas Co. v. Cleveland*, 8th Dist. Cuyahoga No. 107563, 2019-Ohio-1248, ¶ 23. It is not necessary for the defendant to anticipate the specific injury alleged in a case. *Profitt v. Tate Monroe Water Assn.*, 12th Dist. Clermont No. CA2012-10-072, 2013-Ohio-2278, ¶ 19. "The test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances as the defendant, should have anticipated that injury to the plaintiff or to those in like situations is a probable result of the performance or nonperformance of an act." *Id.*, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). Accordingly, in order to establish that the City was open to liability under R.C. 2744.02(B)(2), DeBarr needed to establish that there remained a genuine issue of material fact as to the City's negligence.

{¶ 30} Whether a duty exists is a question of law. *Stein* at ¶ 10. Whether a defendant "properly discharged [its] duty of care" is normally a question for the jury. *Thayer v. B.L. Bldg. & Remodeling, L.L.C.*, 8th Dist. Cuyahoga No. 105950, 2018-Ohio-1197, ¶ 24 citing *Commerce & Indus. Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). Whether the defendant properly discharged a duty becomes a jury question when a plaintiff establishes a duty is owed him and offers evidence showing the defendant breached that duty. *Blancke v. New York C. R. Co.*, 103 Ohio St. 178, 185-186, 133 N.E. 484 (1921), paragraph three of the syllabus.

{¶ 31} In his opposition brief before the trial court, DeBarr never addresses the elements of negligence or how the facts establish the City's negligence. Rather he pointed to the City's actions and deemed them negligent. He alleged that the City

was negligent for failing to timely address the water main break. Furthermore, he alleged that the City workers were negligent when they started work before the arrival of the OUPS to mark the location of gas lines. This act, per DeBarr, caused a delay in the repair and allowed water to flow over the property for close to 12 hours, severely damaging his property.

*Timeliness of the Repair*

{¶ 32} DeBarr alleges that the City acted negligently when it received the call about the water main break at 3:53 a.m., but failed to create a work order until 5:10 a.m., and failed to arrive at the site until 6:26 a.m.

{¶ 33} DeBarr has failed to establish that the City had a duty to arrive within a set time or that its actions breached that duty if it existed. The testimony in the record established that the incident occurred during the early morning hours and that the City had one inspector and one repair crew on duty. There is also an excavation crew, but it is unclear whether that crew was on duty that morning. Miranda testified that there was no record of the 3:53 a.m. call. Nevertheless, the evidence in the record established that when he received a call at 5:10 a.m., he created a work order two minutes later. Miranda testified that he would have assigned the task to a crew when they were available. In this instance, he assigned the task to Gembus' crew approximately 30 minutes later.

{¶ 34} Additionally, Miranda's actions are not without context. If a call came in, but a repair crew was doing a job, Miranda would wait until a crew was available before assigning a crew. Even if Miranda received the earlier call, there is no

evidence in the record to suggest that the delay was unreasonable. The record does not reflect that the City breached the duty of ordinary care by assigning a repair crew, the only crew on duty at that time of the morning when it became available.

*Gas Line and Continued Water Flow*

{¶ 35} DeBarr also argues that the City acted negligently when it started work prior to OUPS arriving to mark the location of gas lines. This act, per DeBarr, led to the water flowing for several hours, damaging his property. Essentially DeBarr alleged that the City breached a duty of care.

{¶ 36} It is undisputed that the City began work on the water main break prior to OUPS' arrival and that a gas line was punctured. DeBarr suggests the City had a duty to wait until OUPS arrived before beginning the repair. Juan Elliot, CWD's assistant chief of distribution, testified, to the contrary, that CWD employees were allowed to begin working prior to OUPS arrival. When making an emergency underground repair a utility must notify OUPS; however, "[t]his notice need not occur before commencing excavation." R.C. 3781.28(F). Even if this were not the case, R.C. 3781.28(F) puts the responsibility for notifying OUPS on the owner of the utility system, in this case, Bay Village.

{¶ 37} DeBarr cites to *Ohio Bell Tel. Co. v. Cleveland*, 8th Dist. Cuyahoga No. 98683, 2013-Ohio-270, in support of his argument that the City's failure to contact OUPS before excavating was negligent; however, that case is distinguishable. Preliminarily, the relationship between the City and Ohio Bell is different. In that case, both the City and Ohio Bell functioned as utilities and both

had underground conduits in the same location. Additionally, there were visible markings already in place establishing that Ohio Bell had underground conduits in the location the City needed to excavate. Secondly, the case focused solely on the issue of whether immunity was reinstated under the third tier of immunity analysis. The appellate court found that there were genuine issues of material fact as to whether City workers acted in a wanton or reckless manner. The evidence established that the City proceeded with excavation where the location of other underground utilities was visibly marked and the City drilled far beyond the necessary depth for the task. In comparison, the record in this case does not include any information on how the City conducted its excavation. The mere fact that the gas line was punctured is not enough to establish that the City acted negligently.

{¶ 38} Finally, DeBarr argues that the gas main puncture caused a delay in the repair that allowed water to run over his property unchecked for several hours. However, this contention is not supported by the record. In his deposition, DeBarr testified that he did not see the water flowing over his property. A neighbor notified him of the issue, but he did not personally observe the pump in action, nor did he know to whom the pump belonged. The affidavit attached to his motion supports this testimony, because DeBarr indicated that he learned later that the water was pumped over the cliff. Accordingly, DeBarr's averments are not supported by personal knowledge.

*Establishing a Standard of Care*

{¶ 39} The evidence presented in this case contrasts with the evidence presented in *Nelson v. Cleveland*, 8th Dist. Cuyahoga No. 98548, 2013-Ohio-493. Nelson was injured during an accident caused when her car traveled through a large puddle of standing water that extended across all three lanes of traffic on State Route 2 near the Edgewater Park exit. In addition to other claims, Nelson alleged that the City negligently failed to maintain and/or repair the sewer catch basin and water runoff systems in that area. *Id.* at ¶ 3. The City filed a motion for summary judgment arguing it was entitled to political subdivision immunity. The trial court granted the motion and Nelson appealed.

{¶ 40} Noting that the plaintiff bears the burden to "introduce substantial evidence from which the jury may reasonably infer the standard of care that is appropriate to the situation established by the evidence," the court noted that Nelson presented evidence that the City negligently maintained and/or repaired the catch basin creating a genuine issue of material fact. *Id.* at ¶ 22. Specifically, Nelson presented an affidavit from an expert who opined that the City had not taken the necessary measures to properly maintain the drainage system for that area. Furthermore, the expert noted that the condition of the drainage system that caused the standing water at the site of the accident had been deteriorating "for a considerable time." *Id.* at ¶ 23.

{¶ 41} In a similar case, *Leslie v. Cleveland*, 2015-Ohio-1833, 37 N.E.3d 745, (8th Dist.), Leslie hit a pothole in the area of East 82nd and East 84th Streets in

Cleveland, lost control, and crashed into a utility pole. Leslie sued Cleveland alleging, in part, negligent failure to maintain the road. Cleveland filed for summary judgment and the trial court denied the motion. Cleveland appealed the denial of political subdivision immunity.

{¶ 42} *Leslie* differs from the instant case because it revolves around the existence of a hazard or defect. Where a hazard or defect exists, "'a duty of reasonable care does not arise unless the defendant has notice, either actual or constructive, of such hazard or defect.'" *Id.* at ¶ 17, quoting *Davis v. Akron*, 9th Dist. Summit No. 19553, 2000 Ohio App. LEXIS 843, ¶ 4 (Mar. 8, 2000). Nevertheless, this court found that both Cleveland and Leslie presented evidence in support of their respective position, i.e., regarding whether Cleveland had constructive notice of the pothole. Cleveland presented evidence that it had not received any complaints about a pothole in the area for the past two years. Leslie countered by presenting crash site photographs and police measurements of the pothole establishing it to be four feet by seven feet. Leslie also provided testimony from an asphalt foreman who opined that the pothole was caused by an underground sewer or water line rupture that caused the pavement to erode and sink.

{¶ 43} Here, DeBarr did not present any evidence to establish the City's actions violated a standard of care. DeBarr's evidence established that there was a delay between the initial call and CWD's arrival at his home. However, there is no basis, in the record, for the trier of fact to determine whether the delay was unreasonable given the circumstances. Consequently, DeBarr has failed to establish

that the City's action was negligent in this regard. Furthermore, DeBarr's evidence established that the City damaged a gas line while attempting to repair the water main. DeBarr has failed to present any evidence to establish how the City should have conducted the repair. Since DeBarr did not establish a standard of care that the City violated, he failed to expose a genuine issue of material fact. Accordingly, the City's motion for summary judgment should have been granted.

{¶ 44} Accordingly, the City's first assignment of error is sustained.

{¶ 45} In the second assignment of error, the City alleges that the trial court erred when it failed to reinstate immunity under R.C. 2744.03(A)(5), which states:

> The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 46} Based on the resolution of the first assignment of error, we need not address the third tier of immunity analysis. Immunity was not removed so it did not need to be restored under R.C. 2744.03(A)(5).

{¶ 47} Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EILEEN A. GALLAGHER, J., CONCUR